[No. 6488.   Decided March 9, 1907.]

AUGUST NESALHOUS, *Appellant*, v. SOPHIA WALKER,
*Respondent, and* CAROLINE B. WALKER,
*Intervener*.[1]

WATERS AND WATER COURSES—RIPARIAN RIGHTS. The common
law doctrine of riparian rights in the use of waters of a stream has
become a rule of property in this state.

SAME—ACQUISITION OF RIGHTS—IRRIGATION. Where parties ac-
quired or initiated their rights to lands before any attempt was
made to acquire by appropriation the right to the use of waters of
a stream flowing through the lands, their respective rights to use
of the waters must be determined by the common law; and the same
permits a reasonable use of the water for the purpose of irriga-
tion.

SAME—APPORTIONMENT OF WATERS. Where three riparian owners
each own the same amount of arid land requiring substantially the
same amount of water for irrigation, the waters of a stream flowing
through the land should be equally apportioned among them, where
the claims to prescriptive rights find no support in the record and
their rights do not rest upon appropriation.

SAME—WAIVER OF RIGHTS. The assertion of rights to waters by
appropriation is not antagonistic to, or a waiver of, riparian rights.

SAME—PRESCRIPTION. An owner of arid land .has a prescriptive
right to maintain a ditch over adjoining land, where for thirty years
she has conducted the water of a stream through the same for irri-
gating her lands.

Appeal from a judgment of the superior court for Kitti-
tas county, Rigg, J., entered March 19, 1906, upon find-
ings in favor of the defendant and intervener, after a trial
on the merits before the court without a jury, in an action
to determine the rights of riparian owners to waters of a
stream. Reversed.

*E. Pruyn*, for appellant.

*Carroll B. Graves* and *J. H. McDaniels*, for respondent.

[1]Reported in 88 Pac. 1032.

RUDKIN, J.——The plaintiff, Nesalhous, is the owner of 160 acres of land in the Kittitas valley. He filed his pre-emption declaratory statement April 1, 1871, made final proof September 16, 1873, and patent issued July 1, 1874. The intervener, Caroline B. Walker, is the owner of 160 acres adjoining the lands of the plaintiff and lying immediately to the south thereof. The Caroline B. Walker lands were entered by John Goller, June 11, 1870, and final proof was made September 21, 1870. The intervener has succeeded to the title and all the rights of Goller by mesne conveyances. The defendant, Sophia Walker, is the owner of 160 acres in the form of an "L," lying immediately to the east and south of the intervener's land. All three tracts are arid, and to produce agricultural crops, require artificial irrigation. Dry Gulch creek runs in a southerly direction through the several tracts, and the present controversy arose over the right to use the waters of the creek for irrigation purposes. The plaintiff alleged his ownership of the land along the creek, his appropriation and diversion of 160 inches of the water flowing in the creek in the year 1870 for the purpose of irrigating and reclaiming his land and for stock and domestic purposes, the continued use of the water thus appropriated from the date of original diversion up to the present time, that the defendant claimed the right to enter upon his premises and divert the waters of the creek to her own land, depriving him of the use thereof, that the water in the creek was very low at the time of the commencement of the action, and that he required the whole thereof for the proper irrigation of his lands. The prayer of the complaint was for a decree adjudging the plaintiff the first appropriator and the first riparian owner, and enjoining the defendant from diverting the waters of the stream to his prejudice.

The defendant, after denying certain allegations of the complaint, by way of affirmative answer and cross-complaint, set forth and deraigned title to the lands claimed by her, alleged an appropriation and diversion of the waters of the

creek in the year 1874 by her predecessor in interest, to the amount of 100 inches, for the purpose of irrigating and re-claiming her said lands, the continued use of the water thus appropriated from the date of diversion to the present time, the wrongful obstruction of the creek and the diversion of the waters thereof by the plaintiff, and prayed that she be decreed to have the first and prior right to the use of the waters flowing in the creek to the extent of her appropria-tion. Caroline B. Walker, by leave of court, intervened in the action and filed her complaint in intervention, deraign-ing her title to the lands claimed by her, and alleging an appropriation of the waters of the creek to the amount of forty inches by her predecessor in interest in the year 1872, their diversion for the purpose of irrigating and reclaiming her said lands, the continued use of the water up to the present time, the wrongful obstruction of the creek and the diversion of the waters thereof by the plaintiff, and prayed for injunctive relief. The allegations of the complaint, the complaint in intervention, and the answer and cross-com-plaint were put in issue by answer and reply, and the cause came on for trial. The court found that the intervener and the defendant had the first and prior right to the use of the waters in controversy, to the extent or amount of forty inches each, by reason of the appropriations made by their predecessors in interest, and entered a decree accordingly. No relief was asked or granted as between the intervener and the defendant. From the final judgment of the court, the plaintiff has appealed.

The court below in its findings and conclusions applied the doctrine of prior appropriation, and if its ruling in that regard is correct, the decree should be affirmed, as the findings of the court are sustained by the testimony. If, on the other hand, the rights of the parties are governed by the common law doctrine of riparian rights, the decree is erroneous and must be materially modified. The right to appropriate water for mining and agricultural purposes from water courses on

the public domain is sanctioned by acts of Congress, and recognized by all the courts; but when the government ceases to be the sole proprietor, the right of the riparian owner attaches and cannot be subsequently invaded in those states where the common law doctrine of riparian rights prevails. The common law rule was recognized and adopted by this court, after full consideration, in the case of *Benton v. Johncox*, 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107, and whether best suited to local conditions or not, the decision established a rule of property that should not now be disturbed or departed from. In the case now under consideration, all parties concerned acquired or initiated their rights to their respective tracts before any attempt was made to acquire rights in the waters of the stream by appropriation. Therefore their rights in the stream and the waters therein flowing must be determined by the rule announced by this court in the case cited. It was there declared that the common law doctrine of riparian rights is not inconsistent with a reasonable use of the waters of the stream by riparian owners for the purposes of irrigation. Perhaps as correct and definite a statement of the common law rule governing the rights of riparian owners as can be found is the following, from the opinion of the court in *Harris v. Harrison*, 93 Cal. 676, 29 Pac. 325:

"According to the common law doctrine of riparian ownership as generally declared in England and in most of the American states, upon the facts in the case at bar the plaintiffs would be entitled to have the waters of Harrison Canon continue to flow, to and upon their lands as they were naturally accustomed to flow without any substantial deterioration in quality or diminution in quantity. But in some of the western and southwestern states and territories, where the year is divided into one wet and one dry season, and irrigation is necessary to successful cultivation of the soil, the doctrine of riparian ownership has by judicial decision been modified, or, rather, enlarged, so as to include the reasonable use of natural water for irrigating the riparian land, although such use may appreciably diminish the flow

down to the lower riparian proprietor. . . . Of course, there will be great difficulty in many cases to determine what is such reasonable use; and 'what is such reasonable use is a question of fact and depends upon the circumstances appearing in each particular case.' . . . The larger the number of riparian proprietors whose rights are involved, the greater will be the difficulty of adjustment. In such a case the length of the stream, the volume of water in it, the extent of each ownership along the banks, the character of the soil owned by each contestant, the area sought to be irrigated by each—all these and many other considerations must enter into the solution of the problem; but one principle is surely established, namely, that no proprietor can absorb all the water of the stream so as to allow none to flow down to his neighbor."

In *Smith v. Corbit*, 116 Cal. 587, 48 Pac. 725 it was held that riparian owners are entitled to have their natural wants supplied by using so much of the water as is necessary for strictly domestic purposes, and to furnish drink for man and beast, before any can be used for purposes of irrigation; and after their natural wants are supplied, each party is entitled to a reasonable use of the remaining water for irrigation, and where the interests of the parties will be conserved thereby, the court may apportion the flow of the water of the stream to the respective owners by periods of time, so that each may have the full flow during the designated period. See, also, *Jones v. Conn*, 39 Ore. 30, 64 Pac. 855, 65 Pac. 1068; Pomeroy, Riparian Rights, § 134.

While the distribution of the water of a stream among riparian owners, according to common law principles, is most difficult, where the stream is long, the riparian owners numerous, and the quantity of water limited, yet in this case each of the parties own the same quantity of land of substantially the same character, their necessities and conditions are substantially the same, and an equal distribution of the water of the creek between them will mete out substantial justice as nearly as substantial justice can be attained.

40—45 wash.

The respondents earnestly insist that the appellant brought his action relying on his appropriation, and after being defeated at the trial on that issue he should not be permitted to change the theory of his case on appeal. We can only gather the theory of the appellant from his pleadings and the record. In his complaint he relied on his riparian rights and asked the court to make findings in conformity therewith. The contention of the respondent is therefore untenable, unless we hold that a mere assertion of rights by appropriation is antagonistic to, and in effect a waiver of, rights arising out of riparian ownership. We do not think that such is the law. In fact the contention of the appellant throughout this case was identical with the contention of the successful parties in the case of *Benton v. Johncox.* The court there gave full force and effect to the claim of riparian ownership, notwithstanding the concurrent claim by appropriation. The usual claim of a prescriptive right is asserted by all the parties, but such claim finds no support in the record. We will add, however, that in our opinion the respondent, Sophia Walker, has shown a prescriptive right to maintain over the appellant's land, the ditch through which she and her predecessors in interest have conducted water for upwards of thirty years. *McEwen v. Preece, ante* p. 612, 88 Pac. 1031. Inasmuch as all parties are asking to have their rights established, and each is claiming more than entitled to, no costs will be allowed on this appeal.

The decree of the court below is reversed with directions to enter a decree distributing the waters of the creek equally between the plaintiff, the intervener, and the defendant, and quieting the title of the respondent, Sophia Walker, in the ditch over the appellant's land through which her portion of the water is and has been conducted.

HADLEY, C. J., FULLERTON, ROOT, CROW, MOUNT, and DUNBAR, JJ., concur.