[No. 11138.    Department Two.    August 22, 1913.]

COULEE LIVE STOCK COMPANY, *Respondent*, v. PLUVIUS
DEVELOPMENT COMPANY, *Appellant*.[1]

WATERS AND WATER COURSES—DIVERSION—INJUNCTION—NOMINAL
DAMAGES—EQUITY. Equity will not enjoin the diversion of waters
required for irrigation where the plaintiff sustains only nominal
damages; and where the result is problematical, and it is impossible
to ascertain with any degree of certainty the effect of the contem-
plated diversion, and neither party will lose any rights, the action
may be held in abeyance until such time as the damages, if any, can
be ascertained by dependable facts.

Appeal from a judgment of the superior court for Grant
county, Steiner, J., entered October 17, 1912, upon findings
in favor of the plaintiff, in an action to enjoin the diversion
of waters of a stream.    Reversed.

*Lambert & Jeffers*, for appellant.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel),
for respondent.

MORRIS, J.—Respondent, as the owner of agricultural lands
bordering upon, and subject to the overflow of, Steamboat
lake and Devil's lake, two connecting lakes in the Grand cou-
lee, in Grant county, brought this action to enjoin appellant
from maintaining a dam across Burke creek and thus divert-
ing the water which would otherwise flow down the creek into
Steamboat lake; it being alleged that such diversion caused
the water to flow through what is known as Spring canyon,
to the Columbia river, thereby depriving those two lakes of
their natural supply of water, causing great and irreparable
injury to respondent's land. Appellant denied that its dam
would divert any water to which respondent was entitled, or
that any diversion caused by it would work any injury to
respondent's lands.    Upon these issues, trial was had, and the

[1]Reported in 134 Pac. 684.

lower court in determining the facts in favor of respondent, granted the relief prayed for.

There is much testimony in the record, and a number of interesting legal questions are discussed in the briefs. It seems to us, however, that all these questions, save one, are more or less academic, in view of the finding of the lower court that respondent has sustained only nominal damages. It is not disputed but that both parties have spent much money in their irrigation schemes and that each makes a beneficial use of the water it obtains. The beneficial use of these waters by appellant could not be enjoined if such use disturbs merely a naked legal right of respondent and subjects it to no injury. The general purpose of a prohibitory injunction is to restrain the doing of an act which will cause irreparable injury when there is no adequate remedy at law. Equity, so far as we know, has never taken jurisdiction to restrain the beneficial use of water required for the irrigation of arid lands, when there is no necessity for such restraint nor consequent injury to others.

An examination of the record before us convinces us that the lower court was right in finding that the use of the waters by appellant has as yet caused no injury to respondent. Whether, as alleged in its petition, such injury will be caused by the maintenance of appellant's dam and the use to which it contemplates putting the waters impounded in the dam, is problematical and must be determined from facts, which, on account of the season of the year the dam was constructed and the time the action was tried, could not be determined with any degree of certainty. One reason why it is in our judgment impossible to ascertain the true effect of this dam upon the waters of these two lakes is that it is admitted by both parties that the spring of 1912, the first since the construction of the dam, was an exceptional season in that locality and that very little, if any, surface water accumulated from the rains and melting snows or found its way into these two lakes. On the other hand, it is also admitted that ordinarily during the spring freshets a large amount of water

finds its way into these two lakes, and inasmuch as respondent testified that the damage suffered by it, in case its fears should be realized, could be readily ascertained and determined, it seems to us much more equitable to hold that the action is premature; and while the law does not favor continued litigation, it will be more in accordance with the principles of equity to wait the final determination of the facts that must determine the respective rights of the parties until such a time as the actual facts can be proved to the court, rather than as now to assume conditions which may or may not happen. It is much easier and more satisfactory to the court to find what has happened than to be compelled to depend upon the opinions of witnesses as to what may or may not happen. Neither party will lose any rights by another hearing of this cause at such a time as it can be definitely ascertained whether or not the water diverted by appellant's dam would cause such an injury to respondent's lands as equity would relieve against. The law of this case is simple. It is a lack of dependable facts that convinces us that at this time no final judgment should be entered. *Wintermute v. Tacoma Light & Water Co.*, 3 Wash. 727, 29 Pac. 444.

We will not, however, order the dismissal of the cause. Such a course would only subject the parties to the unnecessary expense of commencing another suit. We think it better to reverse the judgment and remand the cause for a further hearing upon the issues at such a time as the facts can be clearly and accurately determined.

It is so ordered.

CROW, C. J., ELLIS, FULLERTON, and MAIN, JJ., concur.