[No. 12670.   Department One.   December 8, 1915.]

JOHN MALLY et al., *Appellants*, v. JOHN WEIDENSTEINER,
*Respondent*.[1]

WATERS AND WATER COURSES—PRESCRIPTIVE RIGHTS—LOSS—WASTE.
A prescriptive right to use, for the irrigation of nonriparian land, a
specified quantity of the flow of a stream, is not affected by the fact
of a wasteful use of additional water.

SAME — PRESCRIPTIVE RIGHTS — CONTINUOUS USE — CHANGES IN
POINT OF DIVERSION.   Changes in the point of diversion of the waters
of a stream, for use by right of prescription on nonriparian lands,
all upon the owner's riparian lands and within a distance of two hun-
dred yards, do not affect the continuity of the adverse use as against
other riparian owners.

SAME—PRESCRIPTIVE RIGHTS—CONSENT.   Consent to the diversion
of the waters of the stream at another point on other lands, does
not show that the diversion and use at the point in question was
not adverse or by consent of a lower riparian owner.

SAME—PRESCRIPTIVE RIGHTS—HOSTILITY OF USE—INJURY TO RIPA-
RIAN RIGHTS—SUBSEQUENT DIMINUTION OF SUPPLY.   Inasmuch as ripa-
rian owners may enjoin any diversion of the waters of the stream,

[1]Reported in 153 Pac. 342.

even if only nominal damages are suffered, the fact that an adverse diversion and use of one and one-third cubic feet per second of the waters of a stream did not, during the earlier years of the pre-scriptive period, cause lower riparian owners any loss or damage nor interfere with their rights until the supply had become greatly diminished, does not prevent the use from ripening into a prescrip-tive right.

SAME—PRESCRIPTIVE AND RIPARIAN RIGHTS—DIMINISHED SUPPLY—APPORTIONMENT. Where a riparian owner acquired by prescription the right to divert one and one-third cubic feet per second of the flow of the stream for use on nonriparian lands, but did not divert more than one-third of the volume of the stream, leaving, during the prescriptive period, for the use of riparian lands, two-thirds of the flow of the stream, and subsequently there was a great diminution of the supply and flow, his prescriptive right should be limited to one-third of the diminished flow, leaving two-thirds thereof to be equally apportioned to riparian lands.

COSTS—PREVAILING PARTY—COSTS ON APPEAL. Where appellant has been deprived of all riparian rights, and on appeal was restored thereto in large measure, he was substantially successful, and en-titled to costs both below and on appeal.

Appeal from a judgment of the superior court for Stevens county, Blake, J., entered March 7, 1914, in favor of the de-fendant, in an action for equitable relief, tried to the court. Reversed.

*Albert I. Kulzer* and *Carey & Johnson*, for appellants.

*Stull, Wentz & Bailey*, for respondent.

PARKER, J.—The principal object sought by the plaintiffs in this action is to have the defendant enjoined from divert-ing the waters of Grouse creek to his nonriparian homestead land. They also seek apportionment of the waters of Grouse creek between themselves and the defendant for use upon the riparian land of each. The trial court rendered its decree adjudging the defendant entitled absolutely, as against the plaintiffs, to one and one-half cubic feet of water per second of time of the water of Grouse creek for use upon his non-riparian land, upon the ground that he had acquired such right by prescription; adjudging the plaintiffs entitled to

one-eightieth of one cubic feet of water per second of time for domestic purposes, subject to defendant's superior right to one and one-half cubic feet thereof for use upon his non-riparian land; and apportioning the remainder of the water of Grouse creek to plaintiffs and defendant equally for use upon the riparian land of each. From this disposition of the cause, the plaintiffs have appealed.

Appellants and their grantor, the Northern Pacific Railway Company, have been, since prior to the year 1889, the owners of lot one, being the fractional northeast quarter of the northeast quarter of section one in township thirty, north, range forty, east, in Stevens county. The defendant, since 1889, has been the owner of the northeast quarter of section twelve in the same township, having acquired the same under the homestead laws of the United States. The defendant has, since the year 1912, been the owner of the southeast quarter of section one, having acquired the same by mesne conveyances from the Northern Pacific Railway Company, that company having been the owner thereof since prior to 1889.

Having in mind the system of government survey of public lands, it will be noticed that the east line of all these tracts is also the east line of the township, and that they are in order from north to south as follows: appellants' railway land, respondent's railway land, respondent's homestead. The only intervening land is the southeast quarter of the northeast quarter of section one. Otherwise all the lands here involved would be contiguous. Grouse creek is a small, unnavigable, unmeandered stream, with a present maximum flow of water therein along the portion thereof here involved, of approximately ten cubic feet per second, which is diminished during the dry season of the year to not exceeding one and one-half cubic feet of water per second. This creek flows from the east upon respondent's railway land in section one at a point some two hundred yards north of the northeast corner of his homestead in section twelve. It continues to flow west approximately parallel with the north line of his

homestead some two hundred yards, where it turns and flows northerly to and over appellants' land, where it empties into a small lake upon which their land borders. It also flows over the intervening southeast quarter of the northeast quarter of section one, which we have noticed, and which land is also riparian thereto, though apparently unoccupied. These lands lie in an arid region and require irrigation to render them productive.

In the year 1889, respondent went upon the railway land in section one, which he thereafter acquired in 1912, and constructed a dam in the creek and a ditch leading therefrom, by which he diverted a portion of the water of the creek onto his homestead land for irrigation and domestic use. This was the inception of his present claim of the prescriptive right to water of Grouse creek. He continued to divert the water to his homestead for a period considerably more than ten years before he acquired title to his land in section one. The diversion and use of the water thus commenced was made under claim of right, was open, notorious and continuous, without interference by any one until about the year 1912, when appellants several times removed some of the obstructions to the natural flow of the water at respondent's intake, which obstructions were replaced by respondent. According to respondent's own testimony, he diverted from the creek about one-third of the water flowing therein, and the evidence does not indicate that he had at any time diverted any greater proportion of the entire flow of the creek until the past few years, when in the dry seasons he diverted all of the water flowing in the creek, though the water so diverted in later years was not all used upon his homestead, some of it being used on his land in section one, which is riparian to the creek.

The trial court found, in effect, that the defendant has continually diverted one and one-half cubic feet per second of the water of Grouse creek since 1889 and used the same upon his nonriparian homestead, and has thereby acquired by prescription the right to use that amount of water upon his non-

riparian homestead regardless of the present diminished amount of water flowing in the creek in the dry seasons.

During the years when respondent claims to have acquired his prescriptive right, up until about 1912, there flowed in the creek upon appellants' land sufficient water for all present and prospective irrigation and domestic use required thereon. Two-thirds of the water of the creek must then have reached appellants' land, except as possibly diminished by some slight loss in seepage and evaporation, since none of the water of the creek was then used on the land between the point of diversion and appellants' land. The loss of water in recent years to appellants' land was manifestly caused by the diminution of the flow of the water in this portion of the creek, through natural causes or from the increased use of the water by upper riparian owners and the continued diversion by the respondent onto his homestead, which diversion was also increased to some extent by the use of a small quantity of water upon his riparian land in section one. Other facts will be noticed as may become necessary in our discussion of the questions presented.

That respondent's homestead land in section twelve is not riparian to Grouse creek is rendered plain by the fact that it does not border thereon and that it lies beyond the low divide constituting the southerly water shed of Grouse creek, so that it drains away from the creek. 40 Cyc. 558. We do not understand counsel for respondent to contend otherwise. Indeed, the theory of respondent's claim of absolute right by prescription to one and one-half cubic feet of water of the creek per second regardless of the quantity of water flowing in the creek is inconsistent with a claim of riparian right, since the claim of absolute right to a measurable quantity of water in a stream ignores the fact that riparian owners do not have riparian right to any particular quantity of water flowing therein, and that such owners, when the water of the stream is not sufficient for all, must submit to an apportionment of the water between them. It may be, however, that

respondent's prescriptive right is, nevertheless, subject to the rule of proportionment as between riparian owners, a question to be presently noticed, since he did not divert and adversely use all of the water of the creek until within the past few years during the dry seasons, which use, however, during the past few years does not furnish the measure of respondent's prescriptive right.

Contention is made by counsel for appellants that the diversion of the water of Grouse creek has been wasteful, and that much of it has been allowed by respondent to run to waste. There is some evidence in the record tending to so show, but we think that the evidence as a whole warrants the conclusion that the respondent has beneficially used one and one-half cubic feet of the water of Grouse creek upon his non-riparian homestead land during the seasons when it was needed for irrigation, in all of the years since his first diversion thereof in the year 1889. To adjudge him to have such prescriptive right as the use of this one and one-half cubic feet of water would entitle him to, does not give him any benefit from his diversion of any additional amount he may have wasted. We therefore think that, whatever the fact may be as to his wasting additional water, it would not affect his prescriptive right rested upon the continued diversion and use of one and one-half cubic feet of water.

Some contention is made by counsel for appellants that respondent's diversion and use of the water has not been continuous, rested upon the fact that he twice changed the place of diversion on the creek. The three points of diversion resulting from these changes are within a distance of two hundred yards and are all upon respondent's railway land in section one. This change in the point of diversion did not change respondent's adverse attitude towards the riparian rights of the owners of appellants' land in the least. The law seems to be well settled that an appropriator may change his point of diversion so long as such change does not result

in damage to others. 1 Wiel, Water Rights, 504; 40 Cyc. 720.

While this general rule seems to have been applied for the most part to appropriators strictly speaking, which it must be conceded respondent is not, but one claiming the water irrespective of appropriation laws, yet it seems applicable by analogy here. Respondent's adverse claim was to the water of the creek, and where he was taking it therefrom at different points injured appellant's riparian rights exactly alike. We think these changes in points of diversion did not affect the continuity of respondent's adverse use. *Cheda v. Southern Pac. Co.*, 22 Cal. App. 373, 134 Pac. 717, is in harmony with this view.

Contention is made in appellants' behalf that the diversion of the water of Grouse creek by respondent was by consent of appellants and therefore not adverse. This contention seems to be rested upon the fact that, for a considerable time, respondent was, by consent of appellants, taking some water from the creek upon other land of appellants, which they then owned, at a point some distance above respondent's present point of diversion. We think the answer to this contention lies in the fact that that diversion, by consent of appellants, was an entirely separate matter from the diversion and use of the water here involved, and did not interfere or change, as we read the evidence, the continuous diversion and use of the water by respondent from the points of diversion in section one.

Counsel for appellants insist that because, during the period of diversion upon which respondent rests his prescriptive right, they had sufficient water flowing in the creek over their land to satisfy its needs, respondent's diversion of the water did not, therefore, so interfere with their riparian rights as to constitute such diversion adverse to them. The argument is, in substance, that appellants' rights were not violated to the extent that they could have successfully maintained an action to enjoin the diversion of the water by re-

spondent onto his nonriparian homestead land, and that therefore respondent's acts could in no event be the basis of an adverse right until the diversion of the water by him resulted in depriving appellants of water needed by them upon their land, which did not occur until about the year 1912. The rule invoked is well stated in *Alta Land & Water Co. v. Hancock*, 85 Cal. 219, 24 Pac. 645, 20 Am. St. 217, as follows:

"In order to constitute a right by prescription, there must have been such an invasion of the rights of the party against whom it is claimed that he would have had ground of action against the intruder."

This court has also recognized this principle in *St. Martin v. Skamania Boom Co.*, 79 Wash. 393, 140 Pac. 355. The question then is, was the diversion and use of the water by respondent prior to about the year 1912 such a violation of appellants' and their grantors' rights as would have entitled them to an injunction restraining such diversion of the water to respondent's nonriparian land.

At common law, nonriparian owners have no right whatever in a stream as against riparian owners. 1 Wiel, Water Rights (3d ed.), § 815. Riparian owners have the right to have the stream flow to and over their land as it is wont to flow by nature, without any substantial change in quality or diminution in quantity. *Nesalhous v. Walker*, 45 Wash. 621, 88 Pac. 1032. It would seem, then, that any diversion of the water of a stream by a nonriparian owner substantially lessening the quantity flowing to the land of a lower riparian owner, as this diversion did, would be a violation of a right of such riparian owner of such nature as could be enjoined at the suit of such riparian owner, though his damage be only nominal and prospective. In 1 Wiel, Water Rights (3d ed.), at § 816, the learned author observes:

"Entirely immaterial is any inquiry into actual present damage suffered or not suffered by the riparian proprietor to his *present use*. Since the riparian proprietor's right is

not created by use, but is a right to the undisturbed use of his land, whether present or future, arising out of the natural situation of his property with access to the stream, and he may use the water when he will, the absence of actual damage to use at *the time he complains* does not prevent the act of the nonriparian owner being wrongful; even, in fact, when the complaining proprietor is not himself using, nor contemplating to use, the water at all. The courts will act at law by giving nominal damages, or in equity by injunction, to vindicate his right of *future use* of his land, which right is part and parcel of the land, and prevent its loss by prescription, and which future use is (in marked contrast to the law of appropriation) as secure to him as any present use."

This is in harmony with our own decisions, which, since an early date, recognized the existence in this state of common law riparian rights. In *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425, dealing with the right of a riparian owner to have diversion by a nonriparian owner enjoined, though the damage be only nominal or merely prospective, and holding to the common law doctrine entitling the riparian owner to relief as a matter of right, Judge Anders, speaking for the court, said:

"The right of the riparian proprietor to the flow of the water is inseparably annexed to the soil, and passes with it, not as a mere easement or appurtenance, but as part and parcel of it. Use does not create, and disuse cannot destroy or suspend, it. *Johnson v. Jordan*, 2 Metc. (Mass.) 239; *Lux v. Haggin* [69 Cal. 255, 4 Pac. 919, 10 Pac. 674], *supra*. The riparian proprietor has no property in the water itself, but a simple usufruct while it passes along. 1 Wood, Nuisances (3d ed.), p. 471. The right to the use of water flowing over land is identified with the realty, and is a real and corporeal hereditament. *Cary v. Daniels*, 5 Metc. (Mass.) 238. And this right is a substantial one, and may be the subject of sale or lease like the land itself. 1 Wood, Nuisances (2d ed.), p. 412. The respondent, having this clear legal right to the natural flow of the waters of Clover creek over his lands, cannot be unwillingly deprived of it without compensation or due process of law, even by the public, or for a public use, without disregarding the fundamental

law of this state. Even if his damages were shown to be slight, or merely nominal (which is not shown), the right still exists, and cannot be violated with impunity. Actual damage is not indispensable as the foundation of an action. It is sufficient to show a violation of a right. The law will then presume some damage.

"And when the act done is such that, by its repetition or continuance it may become the foundation or evidence of an adverse right, its repetition or continuance will be restrained by injunction. *Webb v. Portland Mfg. Co.*, 3 Sumn. 189. In all such cases a court of equity is the only tribunal competent to grant speedy and adequate relief. And it will not withhold its aid simply because the injuries sought to be redressed may not be the cause of great pecuniary damage. While a court of equity will not undertake to correct merely theoretical or imaginary wrongs, it will never refuse its aid, in cases where it has jurisdiction, to enforce clear legal rights, however small they may appear when viewed from a merely pecuniary standpoint."

This doctrine is adhered to in *Benton v. Johncox*, 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107, and *Nesalhous v. Walker*, 45 Wash. 621, 88 Pac. 1032. In *Anaheim Union Water Co. v. Fuller*, 150 Cal. 327, 88 Pac. 978, 11 L. R. A. (N. S.) 1062, concluding an exhaustive review of the question, the court said:

"The defendants urge, inasmuch as the plaintiffs need but four hundred inches of water for their land, and there remained in the stream after defendants' diversion more than two thousand inches, which flows down to and beyond the plaintiffs' land, and which is more than they can possibly use thereon, that it therefore follows that no damage can ever ensue, even if the diversion is unlawful and should ripen into a prescriptive right by continuance, and, hence, that their diversion should not be enjoined. The theory of the law of riparian rights in this state is that the water of a stream belongs by a sort of common right to the several riparian owners along the stream, each being entitled to sever his share for use on his riparian land. The fact that a large quantity of water flows down the stream by and beyond the plaintiffs' land does not prove that it goes to waste,

nor that the plaintiffs are entitled to take a part of it, as against other riparian owners or users below. Nor can it be said that plaintiffs, on account of the present abundance, could safely permit defendants to acquire, as against them, a right to a part of the water. The riparian right is not lost by disuse, and other riparian owners above may take, or others below may be entitled to take, and may insist upon being allowed to take, all of the stream, excepting only sufficient for the plaintiffs' land. In either alternative, the taking of a part of the water by the defendants would not leave enough for the plaintiffs' use. There is nothing in this case to show how much water is required above and below by those having rights in the stream. In view of the well-known aridity of the climate and the high state of cultivation in the vicinity, the court could almost take judicial notice that in years of ordinary rainfall there is no surplus of water in the stream over that used by the various owners under claim of right. But, however this may be, it is settled by the decisions above cited that a party, situated as the plaintiffs are, can enjoin an unlawful diversion, in order to protect and preserve his riparian right."

This doctrine seems peculiarly applicable to this case because of the fact that Grouse creek is a small stream and has apparently never, in the dry season of the year, carried more water than sufficient to satisfy the needs of riparian land bordering thereon. In 1 Wiel, Water Rights (3d ed.), § 830, it is pointed out that in such cases the application of the rule is without exceptions, though it may not be so where large streams with surplus water beyond all possible needs of riparian land are involved. We are of the opinion that the diversion and use of the water of Grouse creek in section one by respondent in the year 1889, and the continuance thereof up to the present time, to the extent of one and one-half cubic feet per second to his nonriparian land, has ripened into a prescriptive right, since at the time of the diversion in 1889, and at all times since then, it was an invasion of the riparian rights of the owners of the land now owned by appellants, who could have at any time caused such diversion and use by respondent to be enjoined.

Our attention is directed by counsel for appellants to our decision in *Coulee Live Stock Co. v. Pluvius Development Co.*, 75 Wash. 109, 134 Pac. 684, which, they insist, is somewhat inconsistent with our former decisions and the conclusion we have here reached. There may be some language in that decision, read apart from the facts there involved, that furnish room for such a contention. We do not so read it, however, in the light of the facts of that case. There seems to have been there involved a question of fact as to whether the defendant's acts did in fact constitute a diversion of waters to which the plaintiff had riparian right. The case was simply remanded to the trial court for the taking of further evidence upon that question.

While we conclude that respondent has acquired a prescriptive right in the water of Grouse creek for use upon his nonriparian homestead land, we do not agree with the trial court in its holding to the effect that respondent has acquired an absolute right to one and one-half cubic feet of water in Grouse creek per second of time regardless of the diminished flow of water therein. While respondent diverted and used one and one-half cubic feet of water per second during the period he was acquiring his prescriptive right, he was at the same time, as we have seen, diverting and using only one-third of the water flowing in the creek during all of this time. It was not until late years, possibly two or three years prior to 1912, that a greater proportion was diverted by him. During all of this time appellants and other riparian owners below the point of diversion retained their riparian rights, capable of full enjoyment to the extent of two-thirds of the water of the creek, as completely as respondent exercised his claim of right to one-third of the water therein. When the flow of the water had diminished in the dry seasons, evidently to about one and one-half cubic feet per second in the year 1912, or possibly somewhat earlier, but after respondent's prescriptive right became perfected to whatever extent his diversion and use could perfect it, appellants could as well

claim superior riparian right to the remaining water as respondent could claim superior prescriptive right thereto.

It is worthy of note that respondent's use of the water was such a use as would have been a lawful riparian use had his homestead land been riparian to the creek. Is it reasonable then that respondent should be held to have acquired an absolute right to one and one-half cubic feet of water per second of time for all time? Is it not more reasonable to hold that appellants and other riparian owners below the point of diversion retained their right to two-thirds of the water flowing in the creek, unimpaired by respondent's diversion of one-third thereof, though the quantity so diverted by respondent was a constant measurable quantity? Suppose prescriptive rights were acquired in a stream by two nonriparian owners to all of the water flowing therein, each having acquired his right by taking a constant measurable quantity of water therefrom. Suppose, then, the flow is diminished. It is, of course, impossible that each has then an absolute right to the quantity he has theretofore taken. And so it seems to us in this case. Respondent might be in a position more favorable to his absolute claim had he continually, during the prescriptive period, diverted and used all of the water of the creek. Then it might be said he was asserting an absolute claim as against all riparian owners to all the water.

The difficulty of the problem, as compared with one of adverse possession of land, arises from the fact that the right to the use of water flowing in a stream is incorporeal, and, also, from the fact that the adverse use of the water does not include the actual possession of any given portion of water for any given time, as does the possession of land. The possession of the water is necessarily constantly changing. It is the continuous exercise of the claimed right to divert and use the water that ripens into a prescriptive right. It is the continued taking possession of the water rather than the retaining of such possession that controls the prescrip-

tive right. There is a general rule to the effect that a pre-
scriptive right of this nature is measured by the manner and
extent of the taking and use for the prescriptive period. 40
Cyc. 700. This rule, as a general expression, seems of some
aid here, but we do not find that it has ever been applied to
the question of apportionment between a riparian owner and
a nonriparian owner claiming by prescription. Nor has any
decision of the courts come to our notice dealing with the
question of the absolute right to a measured quantity of wa-
ter under a prescriptive right, as respondent is claiming in
this case, where the flow of the stream has diminished and
where, during the prescriptive period, he had not taken all
of the water and thereby deprived riparian owners of the use
thereof entirely. Our decision in *Farwell v. Brisson*, 66
Wash. 305, 119 Pac. 814, may seem of some interest in this
connection. That, however, was not a case affected by the
diminished flow of the water in the stream.

We conclude that respondent has not acquired an absolute
right to one and one-half cubic feet of water per second flow-
ing in Grouse creek regardless of the diminished flow of the
stream, but that, since the riparian rights of the owners of
appellants' lands and other lower riparian owners were not
interfered with in excess of the diversion of the water of the
creek to the extent of one-third thereof during the prescrip-
tive period of the acquisition of respondent's right, respond-
ent is entitled to one and one-half cubic feet per second of
the water of the creek, subject to the further limitation that
in no event is he entitled to more than one-third of the flow
of the water of the creek at any time for use upon his non-
riparian homestead land. Thus limiting respondent's pre-
scriptive right to use of the water upon his nonriparian
homestead to one-third of the water flowing in the creek, re-
sults in two-thirds thereof remaining to be apportioned be-
tween his riparian railway land in section one and appellants'
riparian land. It is somewhat difficult in the light of the
evidence, which is not as clear as it might be as to the needs

of these two riparian tracts, to apportion the remaining water equitably with any degree of exactness. Since, however, there will be two-thirds of the water left in the creek for apportionment between these two tracts, which would seem, according to the evidence, ample for both with perhaps some excess, except in the dry season, we conclude that each is entitled to one-half thereof, that is, one-third of all the water of the creek. Of course, this is only an apportionment as between the parties to this action and cannot affect the rights of others.

There remains the question of costs, both in the lower court and this court, to be disposed of. We conclude that, inasmuch as the evidence in this record clearly shows that appellants, when this action was commenced, were wrongfully being deprived of all their riparian rights by respondent and were therefore compelled to seek redress in this action as against him, and are, by our decision, ultimately successful in a substantial measure, they are entitled to recover their costs incurred in the trial court. For the same reason, they are entitled to recover their costs incurred in this court.

The decree is set aside, and the cause remanded to the superior court with directions to enter a decree in accordance with the views herein expressed.

MORRIS, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.