[No. 15746. Department One. March 20, 1920.]

W. H. HOUGH *et al., Respondents,* v. M. TAYLOR *et al., Appellants.*[1]

PUBLIC LANDS (1)—TREATIES—INDIAN RESERVATION. Lands within the Yakima Indian reservation ceased to be public lands upon setting the reservation apart by the treaty of 1855, ratified by Congress in 1859.

WATERS AND WATER COURSES (22)—RIPARIAN RIGHTS—APPLICABILITY OF COMMON LAW RULE. Upon the extinguishment of all rights of Indian allottees in reservation lands and the passing of title by government patents under the act of 1902, without reservation of water rights, owners upon streams became common law riparian owners.

SAME (1)—WATERS OPEN TO APPROPRIATION—INDIAN RESERVATION —PUBLIC LANDS. The rights of riparian owners are not to be disturbed by the appropriation of water from a stream on an Indian reservation, where the lands were not public lands at the time of the diversion or at any time since.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered April 28, 1919, upon findings in favor of the plaintiff, in an action for injunctive relief, and to quiet title to water rights, tried to the court. Affirmed.

*Parker, LaBerge & Parker,* for appellants.

*Grady & Shumate,* for respondents.

[1]Reported in 188 Pac. 458.

MITCHELL, J.—In its principal aspect, this is a suit to enjoin defendants from maintaining a ditch across plaintiffs' lands, to enjoin them from diverting the water from South Medicine creek, and to establish their riparian rights to the stream and quiet title to the use of the water for all lawful purposes. From a judgment in favor of plaintiffs, defendants have appealed.

The water-shed and all of the lands involved in the action are situated within the boundaries of the Yakima Indian reservation, set apart by the treaty of 1855 that was ratified by an act of Congress in 1859. In 1887, Congress passed what is known as the allotment act, under which the lands now owned by respondents and appellants were allotted to diverse Indians. In 1902, Congress enacted a law providing for the sale of lands allotted to Indians who had died after allotments had been made. The titles of the parties to the action to their several properties flow from Indian titles and rights that were extinguished by sales duly made under the provisions of the act of 1902. The Indian titles to the lands now owned by appellants were extinguished in 1908 and 1909. In 1908 or 1909, respondents commenced negotiations with the government for the land now owned by them, which at that time was an Indian allotment, and received a patent therefor in November, 1913. The patent they received contained no reservation as to any right of prior appropriators of water, nor reservation of any right of way or prior vested right on account of water or ditches. The stream in question is well defined; it is located in an arid section; in the vicinity of these lands it is capable of irrigating several hundred acres of land; and it flows in a southeasterly direction through a narrow valley.

In the year 1908, the predecessors in interest of appellants, without any authority from the government, constructed a ditch from a point above respondent's land and diverted all the water of the stream. The place of diversion was on an allotment the Indian title to which had not been extinguished. The ditch runs through the land of respondents [owned at that time by an Indian allottee], thence on in a southeasterly direction gradually departing from the course of the bed of the natural stream, so as to accommodate certain lands, among others, of appellants, that are not riparian to the stream.

Respondents resided on their land in 1914, made some improvements thereon, but were unable to use any water for irrigation purposes by reason of the diversion of the water and maintenance of the ditch by appellants as above described. During the years 1914 to 1916, respondents, in person or by tenant, were unable to cultivate their land for the lack of water. In the spring of 1917, they attempted to use some of the water for a garden planted on their land, but appellants went upon respondents' land, shut off the source of supply and prevented them from using any of the water. Shortly thereafter, this action was brought.

By a demurrer to the complaint, as well as upon all the proof, appellants argue that the setting apart of the reservation by the treaty with the Indians segregated the lands from the public domain, and that by an act of Congress of 1887 [24 Stat. L., p. 388] the Secretary of the Interior has been given jurisdiction to prescribe rules and regulations to secure a just and equal distribution of water among the Indians upon the reservation; that such jurisdiction is exclusive, and therefore the superior court is without power to enter

a judgment determining the rights between these parties.

The mistake in the argument is apparent. Upon the going into effect of the treaty, the lands ceased to be public lands. 1 Kinney on Irrigation and Water Rights, § 415. Thereafter, it is true, the allotment act authorized the Secretary of the Interior to prescribe such rules and regulations as he might deem necessary to secure a just and equal distribution of water for irrigation among the Indians residing upon the reservation; but the undisputed evidence in the case shows nothing was ever done by the Secretary of the Interior pursuant to that authority pertaining to the lands now owned by these parties or the stream of water in question. Then, upon the extinguishment of all rights of the Indian allottees and the passing of title by government patents under the act of 1902, these lands and the water flowing in the stream through them passed beyond the jurisdiction of the Secretary of the Interior, without their ever having been restored to the condition of public lands. When the government thus disposed of the lands without reserving the water or any right connected therewith, respondents became entitled to the common-law rights of riparian proprietors.

The other contention made by appellants is that, if the disposition of the land by United States patent freed it from the jurisdiction of the Secretary of the Interior to distribute the water, then the doctrine of prior appropriation of water would apply and defeat the action. This contention is based upon the consideration that respondents did not get title to their land until 1913; while the water was diverted by appellants through a ditch constructed in 1908; since which time they have used and maintained it. However, the settled rule in this state is that riparian rights are not to

be disturbed except in so far as the rights of prior appropriation upon public lands may interfere therewith. *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107. It has already been noticed that, at the date of the diversion of the water and the establishment of the ditch, and at all times since, none of the lands belonging to the parties was public land, and that the land at the point of diversion of the water and respondents' land were at that time owned by the United States in trust for the use and benefit of Indian allottees.

The action and the judgment entered in no way affects the rights of the several parties living upon the stream to have their rights determined by proper proceedings according to their respective rights as riparian owners.

Judgment affirmed.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.