[No. 17967. *En Banc.* July 14, 1923.]

R. A. BROWN et al., *Respondents,* v. MARVIN CHASE, *as Supervisor of Hydraulics of the State of Washington, Appellant.*[1]

WATERS AND WATER COURSES (25, 26)—RIPARIAN RIGHTS—NATURE AND EXTENT OF RIGHT TO USE OF WATERS. While common law riparian rights are recognized in this state, the doctrine is modified to the extent that a riparian owner is not granted relief except as to his rights to make a beneficial use of the waters.

SAME (1)—WATERS OPEN TO APPROPRIATION—NEEDS OF RIPARIAN OWNERS. Under Rem. Comp. Stat., § 7354, of the water code, excepting from appropriation water reasonably necessary for irrigation to a non-riparian owner, waters of a non-navigable stream in excess of the needs of riparian owners may be appropriated for use on non-riparian lands.

SAME (41)—DIVERSION—PRESUMPTIONS AND BURDEN OF PROOF. Where the supply is limited, there is a presumption that all the waters of a stream are required by riparian lands, and the burden of proof is upon non-riparian appropriators to show no injury; and where the supply is more than ample for all riparian uses, the presumption is that diversion will not injure any riparian right, and the burden is upon riparian owners to show substantial injury.

SAME (3, 102)—PUBLIC SUPPLY—IRRIGATION—REGULATION OF SUPPLY—APPEAL—"AGGRIEVED PERSONS." A riparian owner is an "aggrieved person," entitled, under Rem. Comp. Stat., § 7361, to appeal from an order of the supervisor of hydraulics, permitting an appropriation of the waters of the stream for the irrigation of non-riparian lands.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered March 17, 1923,

[1]Reported in 217 Pac. 23.

upon stipulated facts, reversing, upon appeal, an order of the supervisor of hydraulics granting a permit to appropriate water, over the protest of a riparian owner. Reversed.

*The Attorney General* and *Fred J. Cunningham, Assistant,* for appellant.

*Hughes & Wallace,* for respondents.

*Darwin G. Tyree* and *H. L. Holgate, amici curiae.*

HOLCOMB, J.—A project was organized for the purpose of irrigating approximately forty thousand acres of arid land in Chelan county, in the vicinity of Wenatchee, by appropriating and diverting some 625 second feet of the waters of Wenatchee river, a non-navigable stream. The plan provided for the storage of water, during the winter and high-water season, in Wenatchee Lake, which is a part of the Wenatchee river's system, and diverting the water from the river a short distance below the lake through an artificial canal, during the irrigation season, to the lands in question. There is sufficient water in the stream at all times to satisfy all possible riparian uses, present and prospective, for beneficial purposes, and in addition to satisfy the existing rights of all appropriators from the stream for the use of non-riparian lands. The storage of water will, however, necessarily slightly diminish the natural flow of the stream during the storage period. The proposed appropriation will release enough water at all times to maintain at least the average minimum annual flow of the river during the dry season.

Application having been made by the district committee to the supervisor of hydraulics for a permit to appropriate 625 second feet of the waters of the Wenatchee river, and to store the same in Wenatchee

Lake, under §30 of the water code (Laws of 1917, p. 461); Rem. Comp. Stat., § 7381 [P. C. § 7232], no protest was filed with the supervisor except that of respondents herein. The supervisor denied the protest and granted the permit, subject to the rights of riparian owners and prior appropriators to the use of the waters of the river for beneficial purposes. Respondents appealed from the order and determination of the supervisor of hydraulics in granting the permit, to the superior court, under the provisions of § 11 of the water code (Laws of 1917, p. 452); Rem. Comp. Stat., § 7361 [P. C. § 7213], claiming that their riparian rights as owners of the land riparian to the stream had been infringed upon, and praying that the permit be cancelled and set aside.

The facts were stipulated. The lands of respondents herein rise precipitously from the Wenatchee river, and are non-irrigable, and useful for pasture only. If the appropriation is made there is, and will be an abundance of water at all times in the river flowing through and past the lands of respondents for stock, domestic and other possible beneficial purposes. The supervisor of hydraulics based his order in granting the permit on certain findings and conclusions as the provisions of the water code require. Certain of these findings and conclusions were excepted to by respondents in presenting their case to the superior court on appeal.

The learned trial judge made an exhaustive study of the question from the decisions of this state, and wrote the following conclusions:

"The right of riparian flow covers the normal flow in flood stage and low water. Being an incident of ownership inseparable from the soil, except by consent of the owner or by condemnation, use cannot create nor disuse destroy any more than failure to

improve or cultivate the land could destroy the fee in the owner or subject it to rights of third persons without the owner's consent, except as an adverse user might so do.''

The Greater Wenatchee Irrigation District, the organization which made application for the permit to appropriate the waters of the Wenatchee river, intervened in the action, and is, in fact, the only real direct party in interest. Counsel for the United States Reclamation Service, being greatly interested in the result of the action, since it affects a large number of Federal projects involving many millions of dollars, and several hundred thousand acres of land in the state of Washington, were granted leave to, and filed briefs as *amici curiae.*

The supervisor of hydraulics, the intervener, and the United States Reclamation Service of the state of Washington each claim that the trial court erred in its conclusions above set out.

The questions, as contended by appellant and the *Attorney General* as his counsel, are: first, whether a riparian right as such, in this state, extends to surplus waters; second, from the viewpoint of procedure, whether respondents are aggrieved persons within the meaning of § 11 of the Water Code (Rem. Comp. Stat., § 7361), authorizing an appeal to the superior court from orders, decisions and determinations of the state supervisor of hydraulics by "any person . . . feeling aggrieved, etc.''

Respondents have filed no brief. The memorandum opinion of the learned trial judge constitutes the only argument in favor of respondents we have before us in this case.

Appellant and *amici curiae* and the intervener all concede that there is no controversy as to the existence

of riparian rights in this state, and contend that the controversy only arises from the measure of these rights. Appellant contends that a riparian right to the use of water does not extend beyond that which may be beneficially used, presently or prospectively, on and in connection with the riparian land involved.

Early in the history of the state, this court held that the principle of riparian rights should prevail in this state. *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107. We have adhered to that doctrine as a primary doctrine from that time down to the most recent decision of this court, in *State v. McBee,* or *In re Doan Creek, ante* p. 14, 215 Pac. 343. But in *Benton v. Johncox, supra,* there was but a single issue involved, and that was the conflicting rights of riparian owners and appropriators from a watercourse, and the right of the riparian owners was held superior to that of the appropriators made subsequently to the acquisition of title by the riparian owners. It was subsequently held by the same personnel of the court in *Prescott Irr. Co. v. Flathers,* 20 Wash. 454, 55 Pac. 635, that that was the only issue involved, and decided in the *Johncox* case, *supra,* and that there was no discussion in the case of the use of surplus or overflow waters from the channel of the stream. There was much discussion in the *Johncox* case as to the propriety and justice of the doctrine of riparian rights, and decisions were quoted in which it was declared that, when a riparian right attaches it cannot be subsequently invaded; and that,

"The riparian owner has the right to have the water flow *ut currere solebat,* undiminished, except by reasonable consumption by upper proprietors, and no subsequent attempt to take the water only can override the prior appropriation of both land and water," (by riparian owners).

And it must be conceded that general expressions have often been used by opinion writers in deciding cases subsequent to the *Johncox* case, *supra,* to the effect that the riparian owner is entitled to the undiminished and unpolluted flow of the stream down to him; but even the *Johncox* case, *supra,* recognizes the right of prior appropriators to take water from the stream for irrigation prior to the acquisition of riparian lands by a riparian owner, thus taking water away from the stream to non-riparian lands to be put to a beneficial use, and the principle of riparian rights was greatly modified by various decisions of the court; such as *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac. 1023, that even riparian owners are not required to return all the water diverted from the stream, but may put the same to beneficial use for the purpose of irrigation. In *Nielson v. Sponer,* 46 Wash. 14, 89 Pac. 155, 123 Am. St. 910, we denied the upper riparian owner the right to absorb all of the waters of a spring arising on his place to the detriment of a lower riparian owner, notwithstanding the statute is designed to give the owners of lands in which springs arise the prior use of such waters, the court declaring:

"Under the common law, each riparian proprietor had a right to ordinary use for domestic purposes of water flowing in a defined stream past or through his land. . . . Appellant had the right to make free use of this water whether it came from a spring on his land or otherwise, for the ordinary domestic purposes; but we do not think that irrigation, at least when conducted in the manner that this was, can constitute a use which will justify an upper riparian owner in taking all of the water to the destruction of the ordinary domestic uses thereof by a riparian owner below, in the absence of prior, legal appropriation."

In the same volume, in *State ex rel. Kettle Falls Power & Irr. Co. v. Superior Court,* 46 Wash. 500, 90

Pac. 650, the court definitely fixed beneficial use as a measure and limit of riparian rights, saying:

"If the relator is considered as a riparian proprietor only, its rights must be limited to those of an ordinary riparian owner, viz., to a necessary amount of water for the irrigation of its own abutting lands."

His Honor seems to lay much stress upon the expressions found in many of our cases to the effect that a riparian owner is entitled to "the undiminished and unpolluted flow of the stream to and past his land," and also the expression in some of our cases to the effect that, since a riparian owner is entitled to "the undiminished flow of the stream," any diversion of the water of the stream by a non-riparian owner, substantially lessening the quantity flowing to the land of a lower riparian owner, would be a violation of the right of such riparian owner, though his damage be only nominal and prospective. *Mally v. Weidensteiner,* 88 Wash. 398, 153 Pac. 342; *Bernot v. Morrison,* 81 Wash. 538, 143 Pac. 104, Ann. Cas. 1916D 290; *Colburn v. Winchell,* 97 Wash. 27, 165 Pac. 1078; *Methow Cattle Co. v. Williams,* 64 Wash. 457, 117 Pac. 239; *Hough v. Taylor,* 110 Wash. 361, 188 Pac. 458.

But we also held in an early case, *Northport Brewing Co. v. Perrot,* 22 Wash. 243, 60 Pac. 403, that, before a riparian owner could restrain another from interfering with the free and unobstructed flow of the water of a stream, appropriated by another, he must show beneficial use of the water diverted by him from the stream as a riparian owner. We have granted relief by injunction to riparian owners where the supply of water of the stream was limited, and there was prospectively substantial damage to the riparian estate. *Rigney v. Tacoma L. & P. Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Mally v. Weidensteiner, supra.*

All of our decisions upon the question involved will not be cited here, because it would make this opinion too long, and because none of them have ever passed upon the exact question involved here; but in general, it may be said that, while this. court has recognized the common law riparian rights, it has also modified and enlarged that doctrine by engrafting upon it the necessity of beneficial use by the riparian owner, refusing relief where the riparian owner was .not substantially damaged, and granting relief where he was either presently or prospectively so damaged. The trial court in his memorandum decision, referring to the section of the statute authorizing condemnation of riparian rights, asked:

"If there is no more to a riparian right that mere user, why enact that excess over the needs of the land for riparian use may be acquired by condemnation?"

The statute of 1890, Rem. & Bal. Code, § 6382, authorized the condemnation of riparian rights to the use of water for any and all purposes except the right to the use of the amount of water being used or needed for irrigation. In *State ex rel. Liberty Lake Irr. Co. v. Superior Court,* 47 Wash. 310, 91 Pac. 968, we held that the meaning of the statute with reference to the water necessary to irrigate the land of a littoral or riparian owner, means the land which he then had under irrigation and also that which he intended to and would place under irrigation within a reasonable time. We also held that it was not to the interest of the state that the water of a non-navigable stream should be idle or going to waste because one of its citizens, having a preference right to its use, unjustifiably neglects to avail himself thereof while others stand ready and willing, if permitted, to apply it to the irrigation of their arid lands. On the other hand,

the preference accorded an abutting owner should not be limited to his immediate, present use of the water. We said that it comports with the general policy of the state to hold that this statute contemplated the use by the abutting owner of the water necessary for his present needs, and for those that accrue as he, in good faith, proceeds with reasonable dispatch to construct the improvements for applying the water to his adjacent arid lands.

To the same effect see, *In re Doan Creek, ante* p. 14, 215 Pac. 343. The provisions of the water code (Rem. Comp. Stat., § 7354) [P. C. § 7206], excepts only the amount of water reasonably necessary to irrigate economically the land then under irrigation by a riparian owner. The statute therefore prevents condemnation of water used in actual irrigation by a riparian owner, but allows condemnation of water to which the riparian owner would have a right as such, but which he is not using, and does not intend to use within a reasonable time.

The application of the principle of riparian rights in water is constantly undergoing modifications, even as a common law declaration.

Wiel on Water Rights in Western States (3rd ed.), states that the weight of authority is opposed to the right of appropriation of water for use on non-riparian land where private riparian lands are involved, although admitting the existence of many decisions contrary thereto in the western states. Kinney on Irrigation and Water Rights (2d ed.), states that the great weight of authority sustains the right of non-riparian diverters to appropriate the surplus waters of non-navigable streams. Beginning on page 1441 of that volume, there is a long discussion of the growth of the modified doctrine of riparian rights, showing that in

California, which applied the doctrine more strictly than any other western state except Washington, and some of the decisions of which state were extensively quoted in the *Johncox* case in this state, has squarely receded from the strict application of *the undiminished flow* theory of the common law, and cites several cases to that effect.

We find that in *Vernon Irr. Co. v. City of Los Angeles,* 106 Cal. 237, 39 Pac. 762, that court held that, where lands of a riparian owner are not injured by the diversion of water above, or where if the diversion were enjoined, such water would not, owing to ditches built by him, flow by the lands in its natural channel, that diversion will not be enjoined. It was further held in that case that, a riparian owner is entitled to the continuous flow of the water with a usufructuary right therein, provided he returns it to the stream above his lower boundary; but has a right to completely appropriate only a part of it.

Even Professor Pomeroy, who was a great stickler for the doctrine of riparian rights, in his work on riparian rights, § 158, referring to the condemnation of water rights where there is an excess of water over the needs of a riparian owner, states:

"Only the *excess* of the water remaining unconsumed after *their* needs have been *reasonably* supplied should be appropriated to the use of distant and non-riparian owners. But in such a case there is no necessity for any resort to the right of eminent domain, to the condemnation of water, nor to the payment of compensation. Communities of owners at a distance from the larger streams should be entitled to reach and appropriate this excess of their waters after the wants of the riparian proprietors are reasonably satisfied, without any condemnation or payment of compensation, since such a use would not substantially affect any

rights held by the riparian proprietors on the
streams."

Even in the eastern states, where the necessities of
the population have never required the appropriation
of waters for irrigation of non-riparian lands, in order
to make the utmost beneficial use of the waters of a
stream, the courts have modified and extended the doc-
trine of riparian rights very largely. That is shown
by the Massachusetts case of *Stratton v. Mount Her-
mon Boys' School*, 216 Mass. 83, 103 N. E. 87. In that
case, Rugg, C. J., said:

"The common law rights and obligations of riparian
owners upon streams are not open to doubt. Al-
though the right to flowing water is incident to the
title to land, there is no right of property in such water
in the sense that it can be the subject of exclusive ap-
propriation and dominion. The only property interest
in it is usufructuary. The right of each riparian own-
er is to have the natural flow of the stream come to
his land and to make a reasonable use of it as it flows
through his land, subject, however, to the like right of
each upper proprietor to make a reasonable and just
use of the water on its course through his land and
subject further to the obligation to lower proprietors
to permit the water to pass away from his estate un-
affected except by such consequences as follow from
reasonable and just use by him. . . . These prin-
ciples, however, are subject to the modification that the
diversion, if for a use reasonable in itself, must cause
actual, perceptible damage to the present or potential
enjoyment of the property of the lower riparian pro-
prietor before a cause of action arises in his favor.
This was settled after an elaborate discussion, by Chief
Justice Shaw in *Elliott v. Fitchburg R.*, 10 Cush. 191."

To the same effect is our decision in *Coulee Live
Stock Co. v. Pluvius Development Co.*, 75 Wash. 109,
134 Pac. 684. In the opinion in that case, we said:

"The beneficial use of these waters by appellant
could not be enjoined if such use disturbs merely a

naked legal right of respondent and subjects it to no injury. The general purpose of a prohibitory injunction is to restrain the doing of an act which will cause irreparable injury when there is no adequate remedy at law. Equity, so far as we know, has never taken jurisdiction to restrain the beneficial use of water required for the irrigation of arid land, when there is no necessity for such restraint nor consequent injury to others.''

We think, therefore, that his Honor, the trial judge, placed too much stress upon loose and general expressions as to the riparian owner being entitled to the undiminished flow of a non-navigable stream in this state.

At any rate, in consonance with the general needs and welfare of the state, especially in the arid and semi-arid regions, and in harmony with the legislation upon the matter, we are now prepared to declare, instead of the mere loose and general expressions in some of our opinions, that (1) waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, on, or in connection with riparian lands, are subject to appropriation for use on non-riparian lands. (2) That where the supply of water in the stream is limited, the presumption is that the riparian lands require all of the waters of the stream, and the burden is upon the non-riparian appropriator of water to show that no riparian right will be injured by his appropriation. (3) That where the supply of water in the stream is more than ample for all possible riparian uses, the presumption is that the diversion by a non-riparian user will not injure any riparian right, and the burden is upon the riparian owner who claims that his riparian rights are being injured by the diversion of such water, to prove substantial injury.

We are not prepared to hold that persons in the situation of respondents, are not "aggrieved persons" within the meaning of the statute, § 11 of the water code, *supra,* authorizing appeals to the superior court from orders, decisions and determinations of the state supervisor of hydraulics by any person feeling aggrieved. An ingenious argument is made by appellant, but it goes more to the question of fact than to the question of law. Where a person is in the situation respondents were in, of being a riparian owner and having an apparently existing right, it cannot be said that he is not entitled to an appeal under the provisions of the code made for the benefit of such a person. Whether they are entitled to relief or not, after a hearing, is another matter, but *prima facie,* they are "aggrieved persons," within the statutes, and entitled to take their matter before the court provided therefor, to be determined.

The judgment of the trial court is reversed, with instructions to grant the permit granted by the supervisor of hydraulics, and to proceed thereunder accordingly.

MAIN, C. J., TOLMAN, PARKER, BRIDGES, MACKINTOSH, MITCHELL, and PEMBERTON, JJ., concur.

FULLERTON, J., concurs in the result.