[No. 346.  Decided February 18, 1892.]

JAMES S. WINTERMUTE, ISAIAH G. MURRAY AND JOHN
MURRAY, *Respondents*, v. THE TACOMA LIGHT AND
WATER COMPANY, *Appellant.*

INJUNCTION—INTANGIBLE INJURIES.

Injunction will not be granted to restrain the pumping of water
from a fresh water lake when it is not shown that the owners of
abutting property will suffer actual and material injury, but that the
fear of threatened injury is based on theoretical grounds, having little
or no foundation in actual practical experiment.

*Appeal from Superior Court, Pierce County.*

Action by James S. Wintermute and others to restrain the Tacoma Light and Water Company from erecting. pumping works on the shore of American lake, and from in any manner appropriating or using the waters of said lake for supplying water to the inhabitants of the city of Tacoma. The court rendered a decree granting an injunction restraining defendant, and from such judgment defendant appeals.

*Doo'ittle, Pritchard, Stevens & Grosscup,* for appellant.
*Thad. Huston,* and *J. C. Haines (L. B. Stedman,* of counsel), for respondents.

The opinion of the court was delivered by

HOYT, J.—It appears from the pleadings or the undisputed proofs, contained in the record, that American lake is a body of fresh water about ten miles from the city of Tacoma, and is three and a half miles long and one mile wide; that the area of its surface is between eleven and twelve hundred acres; that its extreme depth is over one hundred feet and its average depth forty feet; that the average yearly rise and fall of the surface is between three and five feet; that plaintiffs are owners of land bordering upon said lake; that defendant is a corporation engaged in supplying water to the city of Tacoma; that said city has no other supply than that furnished by defendant; that the water now furnished by defendant is procured from creeks so situated that the water therefrom is conducted to the said city by the force of gravity; that the supply thus procured is adequate to the wants of the defendant, and said city, excepting for a period of four or five months of each year; that said defendant is engaged in the perfection and adoption of plans for bringing an adequate supply of water for all its purposes from Green river, and that it ex-

pects to complete such plans and construct works in accordance therewith within the next three or four years; that until it is thus enabled to procure water from said Green river it is necessary to add to its present supply in order to prevent a water famine in said city of Tacoma during a portion of the year; that the water of said American lake is the only water practically available for such purpose; that to prevent such water famine it is necessary that said defendant should take from said lake during the summer months such additional supply of water; that the amount which it would be necessary for it thus to take will not exceed three millions of gallons per day; that defendant is about to erect works for pumping such additional supply from said lake.

The questions presented for consideration are as to the effect upon the waters of said lake of the taking therefrom the quantity of water above specified, and what will be the result to the property of the plaintiffs from this effect upon the lake. Upon these questions the proofs upon the part of the respective parties are somewhat contradictory. That on the part of the plaintiffs enters into a somewhat elaborate consideration of the surroundings of said lake, its water supply, outlet, etc. The theory of the plaintiffs in this regard is that the waters of said lake rest upon an impervious stratum of cement or hard pan, in the shape of a basin, which is supplied only by the rainfall upon its surface, and a limited water shed surrounding the lake, and covering an area but little greater than that of the lake itself; that there is no outlet excepting that at its higher stages the water overflows the rim of this impervious stratum in certain depressed places and percolates through the gravel resting thereon; that at low water there is practically no escape of the waters of the lake excepting by evaporation; that at high water the overflow above referred to percolates through the gravel, and constitutes al-

most the entire supply of certain smaller lakes in the neighborhood, situated at a lower level. With this theory for a basis plaintiffs show that the taking of the proposed amount of water from the lake during said summer months will lower the level thereof from twelve to fifteen inches. There are some vague intimations thrown out by the witnesses testifying to this theory that not only will the waters be thus lowered each season, but that the water thus taken out will not be made good from year to year, and that the result will eventually be a much greater lowering of said level. But this testimony is too speculative and indefinite to demand any consideration whatever. The question, then, that we are called upon to decide, upon plaintiff's own theory, is what would be the effect upon their property of an increase in the fluctuations of the waters of the lake during the year of from three to five feet to that of from four to six feet. It is nowhere made to appear that there is any special reason why any of the property of the plaintiffs will be damaged by such increase in the fluctuation of the waters of the lake. The only rights which plaintiffs are seeking to protect, upon their own theory, as to the waters of said lake, are, so far as the record in this case shows, purely technical and unsubstantial ones. We are, however, far from satisfied with the above stated theory as to the waters of said lake and its source of supply. The testimony in support thereof was purely theoretical, having little or no foundation in actual practical experiment, while the proofs on the part of the defendant tended to establish another and radically different state of facts upon these subjects. This theory of the defendant, like that of plaintiffs, was largely speculative, but certain facts were established by the proofs which it seems to us were absolutely inconsistent with said theory of the plaintiffs, while sustaining and tending strongly to establish the truth of the theory of the defendant. These facts were, that during

the driest of weather, when the stage of water in American lake was at its lowest, the other lakes above referred to, and which upon the theory of the plaintiffs derived almost their entire supply from said American lake, were discharging through their visible outlets at least six millions of gallons per day.

On account of these facts we should, if it were necessary, be compelled to find against the theory of the plaintiffs and in favor of the theory of defendant, as to the water supply in said lake. And with defendant's theory as a basis, it would become very uncertain as to whether or not the abstraction of the amount of water proposed would appreciably affect the stage of water in said lake, and the question of injury to the plaintiffs' rights be removed by one further degree of theoretical speculation. As above indicated, however, we are not satisfied that the effect of the lowering of the waters of the lake to the extent shown by the proofs on the part of plaintiffs would materially affect any of their rights as shore owners. Courts do not seek to protect excepting against material injury, and purely speculative and theoretical injury cannot ordinarily be redressed in the courts. Especially is this true when such redress is sought in a court of chancery by means of the exercise of the extraordinary powers of said court. It was suggested upon the argument that plaintiffs were entitled to this remedy to prevent the taking of such water from ripening into a right by prescription, but we think the circumstances of this case show no danger of such a result. Plaintiffs are not obliged to assert their rights as against the acts of the defendant until the result thereof is made to appear; and they will be in no danger of losing their rights because they have not appealed to the courts to prevent acts which, upon some fine spun theory, may or may not result in possible injury. When the defendant has so lowered the waters of said lake that the property of the plaintiffs is actually and materially

damaged thereby, it will be time for them to ask the courts to interfere. The case is not presented of an act which, when once done, can never be undone. In a case of that kind courts will be much more ready to investigate theories and therefrom determine probable results than in one like this, where, before irreparable injury can be accomplished, fine spun theories on the one side or the other can be proven or disproven by actual results. Courts will not spend their time in the investigation of such theories unless it is necessary to prevent irreparable injury.

The conclusion which we have come to as to the facts makes it unnecessary for us to further discuss the law of the case, and we shall, therefore, postpone the discussion of the important question of the nature of the rights of riparian owners on fresh water lakes until a case arises in which a decision of such question is necessary. It is enough to say, for the purpose of this case, that in our opinion the pleadings and proofs fail to show that plaintiffs have any right to the relief prayed for.

The judgment must be reversed, and the cause remanded to the court below, with instruction to dismiss the action.

ANDERS, C. J., and SCOTT, STILES and DUNBAR, JJ., concur.