[No. 32037. Department One. September 25, 1952.]

GRANDE RONDE LUMBER COMPANY, *Appellant*, v. CLAYTON BUCHANAN *et al., Respondents.*[1]

*C. Orno Shoemaker,* for appellant.

*McCabe & McCabe* (*Robert V. Chrisman,* of counsel), for respondents.

SCHWELLENBACH, C. J.—This is an appeal from a judgment denying plaintiff injunctive relief and declaring that the contract of the parties has, by its terms, expired.

[1]Reported in 248 P. (2d) 394.

Plaintiff is a Washington corporation, its principal stockholders and officers being Olaf R. Serley and Olaf A. Serley, father and son, who live in Minnesota. Defendants are farmers living in Asotin county. They have a considerable stand of timber on their land.

In August, 1947, the parties entered into an oral contract under the terms of which defendants agreed to sell, and plaintiff agreed to buy, defendants' timber. That fall a portion of the timber was cut and hauled to plaintiff's mill, which was located in the near vicinity, and a payment of three thousand five hundred dollars was made September 27, 1947.

December 11, 1947, a formal written contract was entered into. During the trial it was stipulated that the work done in the fall of 1947, prior to the execution of the written contract, should be included within its terms. The contract provided in part:

"The purchasers agree to cut said timber and have the same delivered to their mill-pond at their expense, and agree to pay to the seller the sum of $3.50 per thousand as scaled at the pond by a scaler furnished by the purchasers acceptable to the sellers.

"The sellers hereby acknowledged an advance of $3,500.00 which had this day been paid, and at the end of each month during which timber is cut, there shall be an accounting and the sellers paid the amount due them, but in arriving at the amount due at the end of each monthly accounting period, the purchasers shall be privileged to withhold $1.75 per thousand from the amount due the sellers at the end of each month, which amount shall be applied and accredited upon the $3,500.00 advance hereinbefore mentioned, and the balance to be paid to the sellers in cash. At such time as the above advance has been retired, said purchasers shall then pay the entire amount due to the sellers, in cash at the close of each month when an accounting shall be made to determine the amount due the sellers for the timber cut during said month.

"It is agreed by and between the parties hereto, that the purchasers shall have not to exceed three (3) years from the date of this contract, within which to remove said timber, provided, however, that if it is impossible through no fault of the purchasers to remove said timber within said

time, the purchasers will be given such additional time as may be required upon payment by the purchasers to the sellers of 10% of the agreed purchase price per year of extension on the basis of ten million feet of timber sold."

Additional timber was cut and hauled during 1948, although quite a number of logs were left on the ground. The mill burned October 3, 1948. There was some discussion about rebuilding the mill, but, although the defendants offered their assistance, plaintiff's officers stated that it was not their intention to rebuild. From that time on no timber was cut under the contract.

From time to time during the operations, Buchanan asked for scale slips showing the amount of timber cut. The company's officers were always too busy. However, they did later give him some scale slips, but they were never complete.

The following payments were made under the contract: $3,500 September 27, 1947; $2,207.95 November 12, 1948; $875 August 13, 1949. When the payment was made November 12, 1948, Buchanan demanded the return of his contract, but Serley refused, saying that the timber contracts were the only assets remaining, and they intended to realize something from them. Shortly thereafter, the Serleys returned to Minnesota, and only came back for the Rosengrants trial, which will be discussed later, and for the trial of this case.

In December, 1949, the Serleys were back to attend a trial in which they and one Harold Rosengrants were involved. While here, they negotiated with Robert Weyen for the assignment of their timber contracts. December 16, 1949, the Buchanans were served with a notice that the plaintiff company had authorized Robert F. Weyen to remove the timber purchased under the contract of December 11, 1947, and demanding that Weyen be permitted to remove the timber. They were also notified that refusal would constitute a breach of the contract.

That afternoon, after the trial, in front of the courthouse at Asotin, the parties met. Some rather strong language was indulged in, in which each side cast reflections upon the

ancestry of the other. The Buchanans told the Serleys that they did not want them on their land and that "they would see them in court first."

December 19, 1949, plaintiff corporation executed an agreement with Weyen selling its rights in certain timber contracts (of which the Buchanan contract was one) and agreeing to do everything in its power to get possession of the timber for him. Prior to the execution of the contract Weyen met the Buchanans on property adjoining the Buchanan tract. He testified:

"Q. During the month of December, 1949, were you up in the Buchanan place where this timber is located? A. Yes, I was. Q. Did you at that time see Clayton and Gerald Buchanan? A. We were in the Buchanan place one time, but they weren't home. As I was coming out of some adjacent property, Mr. Buchanan and Gerald walked down to where I was and said, 'We don't want you to cut our timber.' Q. Do you know about when that was? A. Around the middle of December. Q. Did they indicate they were aware you were dealing for this timber? A. I believe they did."

Also, on cross-examination he testified:

"Q. Mr. Weyen, you say that in December, 1949, about the middle of December, as I understand you, the Buchanans—Gerald and Clayton—came down to where you were in the Grouse Flat country? A. Yes. Q. And at that time, you say they said to you they would rather you wouldn't take their timber off; is that their words? A. That might not be the exact words. They might have said, 'Don't remove our timber.' Q. I know, but didn't you testify they said they would rather you wouldn't? MR. SHOEMAKER: I believe that is his testimony, your Honor. A. I don't recall the exact words. By MR. CHRISTMAN: Q. That is all that was said about it? A. Yes. Q. You left and nothing more was said about it? A. Yes. Q. You never had any other conversation with them at any other time after that? A. No."

Weyen also testified that there were approximately four million feet of timber on the Buchanan land and that it would take about seven weeks to remove it.

In July, 1950, Ross Howard contracted with the plaintiff to remove the "down" logs (which had previously been cut)

from the Buchanan property. He testified that Buchanan told him that he could not move the logs because he (Buchanan) had had trouble with Serley; that he replied that he was going to move them because he had invested in them. He also testified:

". . . Clayton said, 'I am not going to let you move them.' He said, 'I wouldn't let Weyen come in and I am not going to let you,' and I said, 'The only way you can stop me is with a court order' and he said, 'You will get that too.' "

Shortly thereafter, he did remove the logs without any interference from the Buchanans.

The Serleys returned to Minnesota, where they remained until the trial of this case, which commenced December 12, 1950. The complaint was verified by them in Minnesota, April 10, 1950.

Paragraph V of the complaint alleged:

"That, during October of 1949, defendants, Clayton Buchanan and Gerald Buchanan, refused to permit the plaintiff or its agents to come upon the hereinbefore described real property for the purpose of removing the timber as agreed in said contract of December 11th, 1947, and said defendants have continually refused to permit the plaintiff or its agents or assigns to come upon said premises for the purpose of performing said contract, and, unless restrained said defendants will continue to harass and interfere with and prohibit the performance of said contract by the plaintiff."

Paragraph VI alleged the contract with Weyen to permit removal of the timber. A restraining order was prayed for. Defendants answered, admitting and denying certain allegations, and cross-complained for damages as the result of certain alleged breaches.

The trial court denied an injunction and also refused an extension of the contract. Judgment was awarded to defendants in the sum of $92.48. This appeal follows.

Appellant makes forty-nine assignments of error. Fortunately for us, however, it groups the assignments into three parts: (1) that the court abused its discretion in permitting respondents to amend their answer after the

trial commenced; (2) in denying the injunction; (3) in denying an extension under the terms of the contract.

After the first witness was sworn, counsel for respondents moved to amend their answer to read that they denied the allegations of Paragraph V, hereinabove quoted, instead of admitting them. The following then occurred:

"THE COURT: In other words, instead of admitting Paragraph 5 of the Complaint, you deny it. MR. SHOEMAKER: I have certainly gone on the assumption they admitted it, and as further time is required to get additional evidence, I would like permission to do that by reason of this. THE COURT: You have no other objection? MR. SHOEMAKER: No other objection than that. THE COURT: The motion to amend will be granted subject, however, to a motion for continuance in the event plaintiff needs additional time to meet that obligation."

Mr. Shoemaker then moved to amend Paragraph III of the complaint by changing the name, "Olaf R. Serley, plaintiff," to "Grande Ronde Lumber Company." This motion was also granted and the court made the corrections by interlineation.

Rule 6(2), Rules of Pleading, Practice and Procedure, 34A Wn. (2d) 71, provides:

"The court, upon motion, at any stage of an action, may order or give leave to either party to alter or amend any pleading, process, affidavit, or other document in the cause, to the end that the real matter in dispute, and all matters in the action in dispute, between the parties may be completely determined as far as possible in a single proceeding. But the order or leave shall be refused if it appears to the court (a) that the motion was made with intent to delay the action, or (b) that the motion was occasioned by lack of diligence on the part of the moving party and the granting of the motion would unduly delay the action or embarrass any other party, or (c) that, for any other reason, the granting of the motion would be unjust."

The court could have, upon proper showing, denied the motion to amend under either (a), (b) or (c) of the above rule. It can be seen that every opportunity was given to counsel to make a showing. On the record we are con-

vinced that the court did not abuse its discretion in granting the motion to amend.

 In considering whether or not an injunction should issue, we deem it appropriate to set out the applicable principles of law.

In *King County v. Port of Seattle*, 37 Wn. (2d) 338, 223 P. (2d) 834, we said:

"It is an established rule in this jurisdiction that it is incumbent upon one who seeks relief by temporary or permanent injunction to show a clear legal or equitable right and a well-grounded fear of immediate invasion of that right. *State ex rel. Hays v. Wilson*, 17 Wn. (2d) 670, 137 P. (2d) 105. Furthermore, the acts complained of must establish an actual and substantial injury or an affirmative prospect thereof to the complainant. *Tifft Co. v. State Medical Institute*, 53 Wash. 365, 101 Pac. 1081; *Rumbolz v. Public Utility Dist.*, 22 Wn. (2d) 724, 157 P. (2d) 927; 43 C.J.S. 439, Injunctions, § 22 (a).

"'In judicial proceedings, no one can be heard to complain unless he can show that he has been injured. Accordingly, one who seeks injunctive relief in a court of equity must satisfy the court, not only that he has a clear right of a character which equity will protect, but also that the act or acts complained of constitute an injurious invasion of that right which will result in or threatens actual and substantial damage. Injunction will not be granted to restrain acts, however irregular or unauthorized, that occasion no injury to the complainant, and the relief, it has been said, will be denied where the complaining party suffers mere mental discomfort unaccompanied by anything else. . . . The basis for injunctive relief must be interference with a legal right of the plaintiff, not of a third party, for the complainant cannot succeed because someone else may be hurt, and it does not make any difference that other persons who may be injured may be of the same race or occupation.' 28 Am. Jur. 220, Injunctions, § 28."

See, also, *Senior Citizens League v. Department of Social Security*, 38 Wn. (2d) 142, 228 P. (2d) 478.

In *Bouckaert v. State Board of Land Commissioners*, 84 Wash. 356, 146 Pac. 848, we said, quoting earlier cases:

"'Courts do not seek to protect excepting against material injury, and purely speculative and theoretical injury

cannot ordinarily be redressed in the courts. Especially is this true when such redress is sought in a court of chancery by means of the exercise of the extraordinary powers of said court.' *Wintermute v. Tacoma Light & Water Co.*, 3 Wash. 727, 29 Pac. 444.

"In *Morse v. O'Connell*, 7 Wash. 117, 34 Pac. 426, quoting from 1 High, Injunctions (3d ed.), § 22, we said:

" 'An injunction, being the "strong arm of equity," should never be granted except in a clear case of irreparable injury, and with full conviction on the part of the court of its urgent necessity.' "

*Lewis v. Eastern R. & Lbr. Co.*, 151 Wash. 83, 274 Pac. 1055, while not involving the question of injunctive relief, discusses the question of what amounts to prevention of performance of a contract:

"In Page on the Law of Contracts, vol. 5, § 2919, which is headed, 'What amounts to prevention of performance by adversary party,' in part it is said:

" 'Actual violence, threats of imprisonment, and the like, which constitute duress, excuse performance which is prevented thereby. . . . In order to operate as a discharge, the conduct of the party who is claimed to be in default must be such as in legal effect prevents performance, as distinguished from conduct which merely makes performance unpleasant or inconvenient. Profane and insulting language, or threats of personal violence, do not make performance impossible and can not be treated as discharging the contract.'

"In *Cole v. Alexander*, 113 Ga. 1154, 39 S. E. 477, it was held that fear of personal violence by the plaintiff on the part of the defendant did not justify him in abandoning land which he had purchased from the defendant and thereby furnish the basis for a cause of action for improvements which had been made."

Now what do we have to show a right to injunctive relief in this case?

1. The controversy which took place in front of the courthouse December 16, 1949. The trial judge who observed the witnesses on the stand stated in his memorandum opinion that there was very little physical difference between the Buchanans from North Carolina and the Serleys from Min-

nesota. He concluded, as do we, that nothing occurred which would put the Serleys in fear of personal violence.

2. The conversation between the Buchanans and Weyen. Weyen was told either not to remove the timber, or that they would rather he did not remove it. This occurred while he was negotiating with appellant and before the contract was executed. He was protected under the contract with appellant. He did nothing further, and neither did the Serleys.

3. The conversation in June, 1950, between the Buchanans and Ross Howard with respect to the removal of the "down" logs. Appellant cannot rely on this occurrence because shortly thereafter Howard did remove the logs without any interference by respondents.

■ We are satisfied from the evidence that appellant failed to establish a clear legal or equitable right and a well-grounded fear of immediate invasion of that right, which would entitle it to injunctive relief.

Appellant contends that, if an injunction is denied, it is still entitled to an extension of time under the terms of the contract. During the cross-examination of Gerald Buchanan he was tendered three thousand five hundred dollars, and was asked for an extension. He refused to accept the tender. A similar tender was then made into court.

■ The contract, under its terms, expired December 11, 1950. In order to be given additional time under the contract, the burden was on appellant to show that it was impossible, through no fault of its own, to remove the timber within the three-year period. The mill burned October 3, 1948. It could have been rebuilt, but was not. From August, 1947, until October 3, 1948, a total of 1,814,530 feet (including the "down" logs removed by Howard) were cut and removed. Nothing further was done by the Serleys until they returned for the Rosengrants trial in November, 1949, at which time they negotiated with Weyen for the sale of their rights. Weyen testified that there remained on the land approximately 4,000,000 feet of timber, which could have been removed in about seven weeks.

It appears from the record that some time during this three-year period (the exact time was not given), the county built a road into this area, thus causing an appreciable increase in the value of the timber. It would seem that, up to the time of the increase, appellant was not particularly interested in expediting this contract, while respondents were. After the increase in value, the attitude of the parties became reversed. From their conduct neither side is entitled to much sympathetic consideration from a court of equity. However, of course, it is appellant which is seeking relief.

Appellant could have removed all of the timber prior to the time the mill burned. But it was not required to do so under the contract, which still had two years to run. But it, through its officers, did nothing for a year following, until the Serleys returned for the Rosengrants trial. To say the least, they were extremely lax in attempting, in good faith, to perform the contract. We cannot agree that they were physically or legally afraid of the Buchanans. Appellant has not sustained the burden of proving that it was impossible, through no fault of its own, to remove the timber within the three-year period.

The judgment is affirmed.

MALLERY, GRADY, DONWORTH, and WEAVER, JJ., concur.