[Sac. No. 2269.    Department Two.—February 7, 1917.]

NORTHERN CALIFORNIA POWER COMPANY, CONSOLIDATED (a Corporation), Appellant, v. JOHN WALLER et al., Respondents.

WATER RIGHTS—APPROPRIATION—CARRYING CAPACITY OF DITCHES—NON-EXPERT WITNESSES.—In an action between successive appropriators of the waters of a stream to determine the proportionate amounts thereof to which they were entitled, in which the controversy hinged upon the carrying capacity of the respective ditches of the parties and the amounts of water actually carried therein, the opinions of witnesses on such matters, none of whom possessed any engineering attainments or any scientific knowledge of hydraulics, is not admissible as the opinion of experts.

ID.—DATA AS BASIS OF EXPERT OPINION—OPINION OF EXPERTS BASED ON DATA — ADMISSIBILITY OF OPINION OF ORDINARY WITNESSES.—The general rule upon all such subjects of inquiry is that where possible the data to establish a given condition or fact must be laid before the court, and if scientific knowledge be necessary to formulate these data into a statement of the ultimate fact to be arrived at, this, if it require a special training or skill, may be done by experts.

A necessary modification of this rule is that when these data—these probative facts to establish the ultimate fact—may not thus be presented to the court, the opinions of ordinary witnesses become admissible as being the best evidence available.

ID.—NONEXPERT EVIDENCE TO SHOW CAPACITY OF DITCH.—Nonexpert evidence is inadmissible to determine the carrying capacity of a ditch, where all data concerning its physical condition were before the court, and its gradient was susceptible of exact measurement.

ID.—ERRONEOUS ADMEASUREMENT OF WATER — FINDINGS — EVIDENCE— COSTS.—In this action to determine the quantity of water to which each of the parties was entitled under their respective appropriations, the method of admeasurement adopted by the court is held to have been erroneous, and the findings to be unsupported by the evidence, and that the plaintiff was entitled to its costs, as it was given a recovery against the claims and contentions of the defendants.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order refusing a new trial. W. D. Tillotson, Judge.

The facts are stated in the opinion of the court.

Carr & Kennedy, for Appellant.

M'Coy & Gans, for Respondents.

HENSHAW, J.—Plaintiff brought its action against John Waller and A. P. Waller, charging them with the partial destruction of a dam maintained to impound the waters of North Battle Creek, in Shasta County, and with threats of the continuance of like trespasses. John Waller filed a cross-complaint, asserting rights in himself and others in the waters of this creek, which rights were declared to be superior to those of the plaintiff. The rights of these cotenants, it was asserted, arose out of a prior appropriation by a ditch known as the Loggerhead Ditch. These cotenants were brought into the action as defendants. While in its form, therefore, this is an action for an injunction against trespass, in its essence it is a controversy over rights to the water of North Battle Creek. Dissatisfied with the judgment of the court in its division of these waters, plaintiff has appealed. Its principal contentions are that the vital findings are not supported by the evidence.

In 1886 the first appropriation of the waters of this creek was made by the defendants and their predecessors in interest through the Battle Creek Bottom Ditch Company's ditch. This ditch is commonly known as and will here be called the "Loggerhead Ditch." The recorded notice declared for an appropriation of six hundred inches of water measured under a four-inch pressure. In 1895 the defendants filed a notice of appropriation by the same ditch of two thousand inches measured under a four-inch pressure. In 1890 and 1891 another ditch taking water out of the creek, was constructed. It was known as the Vilas or the Farlow Ditch, and will here be called the "Vilas Ditch." Appellant contends that by the ownership of Vilas Ditch, which it has acquired, it is entitled to divert 625 inches of water measured under a four-inch pressure, in subordination to the prior right of the Loggerhead Ditch to six hundred inches. The uses of the water under both of these appropriations were originally the ordinary agricultural uses—domestic, watering of stock, and irrigation.

Appellant is a public service corporation engaged in the generation and distribution of electricity for light, heat, and power. It develops this electricity by water, and maintains canals, ditches, power-houses, etc., for this purpose. In 1907 it commenced the construction of the "North Battle Creek Ditch to South Power House," a ditch commonly called and which here will be called the "Cross Country Ditch." Under one of its engineers, H. A. Tedford, the locations of water rights were made and the ditch and its dam constructed. They were completed in 1909 and shortly thereafter the appellant purchased the Vilas Ditch and water rights. The capacity of this Cross Country Ditch is four thousand five hundred miner's inches. The court decreed the right to appellant to divert all the waters of the creek to the full capacity of its Cross Country Ditch, in subordination, however, to the prior rights of the owners of the Loggerhead Ditch.

It is over these prior rights that the controversy arises. The court's first award was to the Loggerhead Ditch and to its owners of six hundred inches of water measured under a four-inch pressure. Next there was decreed to plaintiff (by virtue of its ownership of the Vilas Ditch) 120 inches of water under a four-inch pressure, after which it · was

decreed that an apportionment should be made of the remaining waters at the dam of the Cross Country Ditch, by which apportionment one-sixth of the flow of the stream could be retained by appellant, while five-sixths must be permitted to pass on to the Loggerhead Ditch until it was filled to its capacity. This capacity was found to be 1,854 inches of water measured under a four-inch pressure. The findings further declared against the allegations of the complaint concerning the injury and threatened injury by respondents to appellant's dam. And, finally, the judgment, after setting forth the parties' rights and priorities by the fixed quantities, viz., six hundred inches to the Loggerhead Ditch and then the next 120 inches to the Vilas Ditch, adjudicated that the defendants "have the right to take and divert the said five-sixths of said remainder of water in and through the said Loggerhead Ditch and use the same for irrigation on their lands during the irrigating season of each year or when the same shall be needed or required by them for irrigation."

Appellant contends that the court failed to find upon material issues and that the findings which it made are indefinite, inconsistent, and contradictory, and do not support the judgment. Further, that the judgment itself is void for indefiniteness. Other contentions are advanced, but these are the principal ones which demand consideration.

So far as concerns the water rights, the issues may be briefly outlined. The defendants contended for an absolute priority to the first two thousand inches of the stream measured under a four-inch pressure, and to all of its flow if the quantity was less than this. Plaintiff conceded a priority to defendants of six hundred inches and no more, asserted a second right to the next 625 inches by virtue of the Vilas Ditch and the Vilas water rights, and finally contended for a right in itself of all the remaining flow of the stream subject to these two priorities by virtue of its own appropriation.

The findings and conclusion of the court have already been sufficiently indicated. By them the first right accorded to defendants was a right to but six hundred inches measured under four-inch pressure. Over this right no controversy arises. Plaintiff accepts it and defendants are not appealing. The allowance of but 120 inches to the Vilas Ditch

presents the first matter in controversy, and to its under-
standing a knowledge of the following facts is necessary:
Originally the notice of appropriation by the Loggerhead
Ditch called for six hundred inches—the amount awarded
by the court. This ditch, it appears, was cleaned and re-
paired in the years that followed its construction, and by
this work its actual capacity was increased until, as has been
said, in 1895, the defendants filed a notice of increased ap-
propriation by the same ditch up to two thousand inches.
Whatever may have been the original flow of the Vilas Ditch,
it is not contended that its original carrying capacity was
ever increased. Appellant does not assert that it was. Re-
spondents in their evidence deny that it was ever enlarged.
One of the witnesses sums up this matter in the following lan-
guage: "Well, when the two ditches was first dug the best I
can recollect it there wasn't but very little difference in the
size of them; but the Loggerhead people, as we call them,
cleaned their ditch and kept it up and it got better every
year, but the other ditch was very poorly looked after and it
didn't get no better." There was a time in the history of
the Vilas Ditch when the point of diversion was changed and
the flume at the original intake abandoned, but this was
merely a change in the place of diversion and not in the
quantity of water taken.

In deciding the case the learned trial judge filed his
opinion, which in the brief of appellant is presented *in ex-
tenso* for our consideration, and on that opinion appellant
bases its argument that the court adopted, to its great preju-
dice, an unwarranted and unexpected position in weighing the
evidence and deciding the case. Respondents make answer
that the views of the court are in no wise determinative, that
the judgment rests upon the findings and conclusions of law,
and that the findings being supported and the conclusions of
law sound, a consideration of the opinion is both irrelevant
and improper. Respondents are correct in saying that this
court must and will look to the findings and conclusions
alone to determine whether or not the judgment is sup-
ported, and will consider the evidence alone to determine
whether the findings are supported. Nevertheless the
opinion of the trial judge can with propriety here be used,
and is often used, to elucidate doubtful points and as an
aid in determining what the trial court may have conceived

to have been the vital issues. (*Churchill* v. *Flournoy,* 127 Cal. 355, [59 Pac. 791] ; *Liver* v. *Mills,* 155 Cal. 459, [101 Pac. 299], dissenting opinion of Beatty, C. J.) In its opinion, the trial court declared that the evidence as to the use of the water carried by both ditches was "vague, conflicting, and unsatisfactory," and concluded that the most feasible plan for it to adopt was "to divide the water among the respective claimants as nearly as may be in proportion to the acreage irrigated on the various ranches described in the pleadings." Then, repeating that the evidence as to the acreage irrigated on the respective ranches was "somewhat vague, conflicting, and unsatisfactory," the opinion declared that it appeared "that the acreage irrigated from the Loggerhead Ditch during the time that the Vilas Ditch was in use was approximately five times as great as the acreage irrigated from the Vilas Ditch," and as an award concluded that the Loggerhead Ditch was entitled to the first six hundred inches, that the Vilas Ditch was entitled to the next 120 inches, and that the remaining flow should be divided in proportion of five-sixths to one-sixth. These conclusions, it will be noted, are precisely those which are embodied in the findings and judgment. There is justice, therefore, in appellant's complaint that the court disregarded the vital point of controversy hotly litigated between the parties, that point of controversy being the actual amounts of water which their ditches in fact carried. It was substantially conceded upon each side, such is appellant's contention, that whatever water was in fact carried was put to a beneficial use. But to this, as we have intimated, respondents make answer that the evidence does in fact support the apportionment of the water actually made, and this being the situation, the reasoning of the court in the opinion, even if held to be erroneous, must be disregarded. The soundness of this position we have already declared.

This summarization of the opinion of the court shows the need, however, for a more careful scrutiny of the evidence relied upon by respondents, since it is quite manifest from his opinion that the trial judge did not accord to it the full weight for which respondents contend, in this regard the opinion declaring as follows: "There is some testimony by witnesses who were familiar with the ditches described in the pleadings during their early history as to the comparative

quantity of water carried or conveyed in them. Some of such witnesses estimated that the Loggerhead Ditch carried twice as much water as the Vilas Ditch; some thought that the former ditch carried ten times as much as the latter, but the greater number of such witnesses estimated the quantity of water in the Loggerhead Ditch as being from four to five times as much as in the Vilas Ditch. While this class of testimony is not very satisfactory or conclusive, it tends to corroborate the testimony of defendants as to the comparative acreage irrigated.''

What, then, upon this matter does the evidence disclose? It discloses, first, that there was a gradual increase in the capacity of the Loggerhead Ditch and with that increase in the capacity doubtless an increase in the flow. Nevertheless the amount of this priority is fixed by the court at six hundred inches, which amount is the full amount covered by the original notice of appropriation under which the Loggerhead Ditch was constructed. Touching the capacity and diversion of the Vilas Ditch, and remembering that that capacity and diversion it is conceded was never increased, the direct and positive testimony offered by appellant was, first, as to the dimensions of the ditch with its flumes and the gradient of the flow. This evidence showed a capacity of the 625 inches contended for. Second, there was given the direct evidence of Vilas and his successors that during the irrigating season the ditch ran full, "all it would carry." And, third, it was shown that the old water-marks still stood upon the original flume at the intake (which original flume was abandoned when the point of diversion was changed), and established that the quantity of water which the ditch was receiving was that claimed by plaintiff.

Against this direct and positive evidence there was presented on behalf of respondents evidence, principally their own, going in some instances to the carrying capacities of the two ditches, and in other instances to a comparison of the amount of water which they were actually carrying. To the admission of this evidence appellant strongly objected. But dealing here and now only with its weight and not with its admissibility, it amounted to this: That the witnesses were of varying opinions and placed the capacity of the Loggerhead Ditch at from two times to ten times that of the Vilas Ditch. Evidence of like character was offered by some of

these witnesses as to the amounts of water carried. Thus witness Crooker: "Well, I should say as to the comparative amounts of water in the two ditches that the Loggerhead Ditch would carry at least five or six times more than the Vilas Ditch was carrying." Witness Lakey: "Well, there might have been four times as much water in the Logger-head Ditch as there was in the Vilas Ditch. There might have been more and might have been less." Defendant Patterson: "Well, I would say from four or five times up to eight or ten times more water in the Loggerhead Ditch than there would be in the Vilas Ditch on an average." Defendant Loomis: "About one-tenth; the Vilas Ditch carried about one-tenth as much water as the Loggerhead Ditch." It is to be noted that this evidence was directed to the observations of the witnesses during a number of years, and was carried down until the year 1909, when trouble arose between these litigants. Still further it is to be noted that while the capacity of the Vilas Ditch remained stationary, that of the Loggerhead Ditch was increased by gradual development work. And, finally, it is not to be forgotten that whatever that increase, the prior right of the Loggerhead Ditch over the Vilas Ditch was fixed by the court at six hundred inches (Wiel on Water Rights, sec. 474), and by that determination all of the parties, as well as this court, are here bound—the appellant because it is not complaining of it, the respondent because it has not appealed from it, and this court because for those reasons it is an accepted admeasurement and adjudication.

But what is complained of, and it is a complaint which the appellant is entitled to make, is that its water right for the Vilas Ditch was by the finding of the court unjustifiably reduced.

Here it becomes necessary to say a word concerning the admissibility of this evidence thus permitted to be introduced. Admittedly none of these witnesses possessed any engineering capacity or any scientific knowledge of hydraulics. Their estimates, therefore, of the carrying capacity of the two ditches, as well as their estimates of the amounts of water actually carried, were but mere guesses, and the unreliability of the evidence itself is demonstrated upon the face of it when it is remembered that these guesses varied in declaring the superior capacity of the Loggerhead Ditch to be from two to

ten times that of the Vilas Ditch.   Manifestly, this testimony
was not admissible as giving the opinion of experts.   (*Gold-
stein* v. *Black,* 50 Cal. 463; *State* v. *Maioni,* 78 N. J. L. 339
[20 Ann. Cas. 204, 74 Atl. 526].)   The general rule upon all
such subjects of inquiry is that where possible the data to
establish a given condition or fact must be laid before the
court, and if scientific knowledge be necessary to formulate
these data into a statement of the ultimate fact to be arrived
at, this statement, if it require a special training or skill, may
be made by the opinion of experts.   (*Sappenfield* v. *Main St.
Ry. Co.,* 91 Cal. 48, [27 Pac. 590]; *Parkin* v. *Grayson-Owen Co.,*
157 Cal. 41, [106 Pac. 210]; *McLeod* v. *Miller & Lux* (Nev.),
153 Pac. 566; Wigmore on Evidence, sec. 1918.)   A necessary
modification of this rule is that when these data—these pro-
bative facts to establish the ultimate fact—may not thus be
presented to the court, the opinions of ordinary witnesses be-
come admissible as being the best evidence available.   In illus-
tration, if a controversy had arisen between these parties over
their ditches and water rights and both ditches before trial
had actually been destroyed, leaving no superior data touch-
ing size, capacity, and amounts of water, unquestionably the
evidence of these witnesses would be admissible as being the
best evidence available to establish the fact in controversy.
Or, again, where from the nature of the inquiry it is impos-
sible for any witness adequately to present to the court all of
the facts, as in cases of identity of appearance, of manner, of
size, of color, of weight, and at times of quantity, the opinions
of witnesses based upon the impressions that they have re-
ceived from their observations become admissible.   (Wharton,
sec. 513, note; Lawson on Expert and Opinion Evidence, p. 3;
Rogers on Testimony, 1013.)   But in the present case it is
apparent from what has already been said that incontrover-
tible evidence was available to both sides to establish the
carrying capacity of the Vilas Ditch.   It and its flumes were
there upon the ground.   Its gradient was susceptible of exact
measurement.   Therefore what that ditch could carry could
be shown to a demonstration.   What in fact it did carry was
established without controversy by the testimony offered by
plaintiff, to the effect that when the water was needed the
ditch ran full.   When such data can be laid before a court
it is universally held to be error to admit mere inexpert
opinion.   (*Conner* v. *Stanley,* 67 Cal. 315, [7 Pac. 723]; *St.*

*Louis etc. R. R. Co.* v. *Yarborough,* 56 Ark. 612, [20 S. W. 515] ; *Indianapolis Tr. & T. Co.* v. *Kidd,* 167 Ind. 402, [10 Ann. Cas. 942, 7 L. R. A. (N. S.) 143, 79 N. E. 347] ; *Commonwealth* v. *Sturtivant,* 117 Mass. 122, [19 Am. Rep. 401] ; *Road* v. *Leonhardt,* 66 Md. 70, [5 Atl. 346] ; *Mann* v. *State,* 23 Fla. 610, [3 South. 207] ; *Hurt* v. *St. Louis etc. Ry. Co.,* 94 Mo. 255, [4 Am. St. Rep. 374, 7 S. W. 1] ; *Gulf etc. Ry. Co.* v. *Fox* (Tex.), 6 S. W. 569; *Baltimore & O. R. R. Co.* v. *Shultz,* 43 Ohio St. 270, [1 N. E. 324] ; *Shaw* v. *Jones,* 133 Ga. 446, [66 S. E. 240] ; *Tennessee Coal etc. Co.* v. *Kelly,* 163 Ala. 348, [50 South. 1008] ; *American Tel. & Tel. Co.* v. *Green,* 164 Ind. 349, [73 N. E. 707] ; *American Soda F. Co.* v. *Hogue,* 17 N. D. 375, [17 L. R. A. (N. S.) 1113, 116 N. W. 339] ; *Keefe* v. *Armour & Co.,* 258 Ill. 28, [Ann. Cas. 1914B, 188, 101 N. E. 252] ; *In re Coburn,* 11 Cal. App. 604, [105 Pac. 924].) *Frey* v. *Lowden,* 70 Cal. 550, [11 Pac. 838], upon which respondents rely as supporting the ruling of the court admitting this evidence, involved a controversy over the capacity of a ditch. The declaration of this court was that the evidence of witnesses testifying "upon the subject from knowledge acquired by them in thirty years' experience in mining and in measuring and selling water to miners" was admissible. No criticism can be made of this declaration, taken in connection with what we have already said, because while the opinion speaks of such evidence as being "non-expert," it certainly approaches quite closely to the evidence of witnesses possessing a special skill and knowledge. But that opinion takes no account of the next proposition to which we address ourselves, and that is that the opinion evidence in this case, when admitted, is manifestly evidence of inferior character and value to the evidence introduced by plaintiff touching the actual physical facts and conditions. And in such a case there comes into necessary application the declared presumption of our law (Code Civ. Proc., sec. 1963, subd. 6) that "higher evidence would be adverse from inferior evidence being produced." Respondents, it will be noted, did not seek to controvert the evidence of the capacity of the Vilas Ditch presented by plaintiff—by showing an inaccuracy in its measurements, but contented themselves by offering inferior evidence on the question. And finally upon this subject matter it may be pointed out that there is no necessary conflict in the evidence. It has been said that the capacity of

the Loggerhead Ditch seems to have been steadily increased from the date of its first construction until nine or ten years thereafter, when its owners posted their notice of a new appropriation to the extent of two thousand inches measured under four-inch pressure, to be carried by that ditch, and after that until 1905 when the enlargement was completed. Also it has been pointed out that the capacity of the Vilas Ditch was not increased. The testimony of the witnesses for the defendants ranges through all these years. If we assume (herein, of course, not passing upon the weight of the evidence) that the capacity of the Loggerhead Ditch was thus increased until it was finally capable of carrying two thousand inches, then in truth it would have nearly four times the capacity of the Vilas Ditch, and to this extent the estimates of respondents' witnesses would be supported, allowing to the Vilas Ditch the six hundred or 625 inches claimed for it. The fundamental difficulty, however, arises from the fact that the court, compelled to fix the first appropriation of the Loggerhead Ditch at six hundred inches, adopted the method of cutting down proportionately the rights of the Vilas Ditch and by this method allowed it only 120 inches. The method which the court employed plainly grew out of its conclusion that it would adopt acreage as a basis for its water measurement. But in fact and in law, after awarding to the Loggerhead Ditch the first six hundred inches, the water right of the Vilas Ditch was to be determined by reference solely to its own capacity and to the amount of water which, within that capacity, it actually carried (for we repeat that so far as this appeal is concerned the question of beneficial use is not in controversy).

It follows herefrom that the finding allowing the Vilas Ditch but 120 inches is unsupported.

Nor yet can we find any support for the court's adjudication which, after the award of six hundred inches to the Loggerhead Ditch and 120 inches to the Vilas Ditch, divides the remainder of the flow in the proportion of five-sixths to the former and one-sixth to the latter. The *quantum* of water to which the Vilas Ditch is entitled is an absolute *quantum* after the first priority of six hundred inches to the Loggerhead Ditch has been satisfied. It is not subject to increase or decrease beyond that. Nor yet, upon the other hand, is the Loggerhead Ditch entitled to five-sixths of the flow after

the *quantum* of water to which the Vilas Ditch is entitled has been received by it. The Loggerhead Ditch is and can be entitled only to such additional *quantum* of water over the first six hundred inches as it may have legally appropriated either under its second notice of appropriation or by adverse user, and that is a *quantum* susceptible of exact ascertainment, which therefore should be fixed by the court. After the determination of these amounts, then, as we understand the case, it is not in controversy but that plaintiff by its Cross Country Ditch is entitled to all of the remainder of the water in the stream.

The controversy over the water rights of these parties was substantial. The right which defendants asserted was a priority to two thousand inches of the water of the stream—practically all of it during certain seasons of the year. While plaintiff's action was in form for injunction, as has been pointed out the case resolved itself into a trial and determination of these respective water rights. Plaintiff, though not receiving all that it sought, was given a recovery against the claims and contentions of the respondents. It was entitled to its costs. (Code Civ. Proc., sec. 1022; *Hoyt* v. *Hart,* 149 Cal. 723, [87 Pac. 569]; *Stimson Canal & Irr. Co.* v. *Lemoore Canal & Irr. Co.,* 31 Cal. App. 396, [160 Pac. 845]; *Mally* v. *Weidensteiner,* 88 Wash. 398, [153 Pac. 342]; *Cuthbert Burrell Co.* v. *People's Ditch Co.,* 31 Cal. App. 396, [160 Pac. 845].)

Appellant complains that respondents, under permission to answer an amendment to the complaint, which presented no new matter, improperly availed themselves of this permission to introduce into their answers a new plea of the statute of limitations and that the court, upon motion, refused to strike out this new plea; and, finally, that after having refused to strike it out the court failed to find upon it. In contemplation of the new trial which must be ordered, these matters cease to be of consequence, and the court will permit such amended pleadings or amendments to the pleadings as may be meet in equity.

The other matters urged upon our attention by appellant do not require detailed consideration, as it is unlikely that they will arise in or at the second trial of this case. Thus, as it has been held that appellant is entitled to its costs in

the trial court, and as it is not within the probabilities that there will be another trespass and destruction of appellant's dam, and as the vital controversy is over the apportionment of the water, and, finally, as the judgment is here reversed, it is unnecessary to consider whether or not appellant was entitled to an injunction against the offending defendant Waller, who alone, it appears, tore out a part of appellant's dam. Touching the uncertainty of the judgment, the trial court will, of course, make its judgment as specific within the warrant of the evidence as may be possible.

The judgment and order appealed from are reversed.

Melvin, J., and Lorigan, J., concurred.