[Civ. No. 25366. Second Dist., Div. One. Oct. 10, 1961.]

CELIA SHABSHIN, Appellant, v. LOUIS PACIFICI et al., Respondents.

194

Sam Schermer for Appellant.

John R. Allport, Merrill K. Albert, Cushman & Grover and M. B. Grover for Respondents.

LILLIE, J.—Plaintiff sued for injuries sustained as the result of an explosion in the broiler of a gas stove; she claimed Pacifici (sued herein as Pacificio), owner of the stove, negligently instructed her in the manner of lighting it and that he expressly warranted it to be in good and safe condition;

and that Rheem Manufacturing Company negligently manufactured it. She appeals from the judgment entered on a jury verdict returned in favor of both defendants, and the order denying her motion for new trial.

While appellant does not challenge the sufficiency of the evidence, it appears to be material to her claim of prejudicial misconduct. In December 1958, Pacifici rented to plaintiff a furnished apartment which contained a Wedgewood gas stove, the broiler of which is operated by holding an ignited match above the ignition hole in the front of the oven pan and then opening the gas valve. What, if anything, Pacifici said to her concerning use of the stove is in sharp dispute. Plaintiff testified that when she rented the apartment Pacifici told her ". . . to light a match, open the gas, hold the match close to the hole, and when you hear it start to light you drop it in and it would light, and it won't give you any trouble . . ."; but plaintiff's own evidence shows that Pacifici not only did not say that but said in connection with his denial: "No damn fool would do that . . . you don't drop 'em (matches) in the hole." Lavenbarg, an investigator hired by plaintiff's counsel right after the accident, testified that he called Pacifici on the telephone and the latter told him he had instructed plaintiff on the use of the stove, but when asked if he told her to drop the match in the hole, Pacifici said "he did not remember, he wasn't sure he could have but he didn't know"; that two weeks later, he and Craig, another investigator, went to Pacifici's home, at which time Pacifici said he wasn't sure what he had told plaintiff and couldn't remember; and that on May 27 he went to plaintiff's apartment and examined the stove and found the flash tube completely plugged with matches (about 12), the flash tube "completely out of line" and that it was held in position by a lot of wire, "such as baling wire."

On the other hand, defendant Pacifici, a barber by trade, said the stove was purchased new and installed December 1955; that he had never received complaints that it was not working properly prior to the accident. Pacifici testified he did not, at the time she rented the apartment or at any other time, instruct plaintiff in the manner of the use of the stove; and emphatically denied ever telling plaintiff or her husband, at any time, to drop matches in the flash tube. He also testified that he did not ever tell Lavenbarg on the telephone, or in his home, or at any other time, that he had instructed plaintiff

on how to light the stove; and that Craig told him "What you got to worry about, you're insured; you have insurance, haven't you, don't cost you nothing." A recording of the conversation between Lavenbarg and Pacifici was taken by Craig on a hidden minifone without the knowledge of Pacifici. The substance of Pacifici's statements, although in places not too intelligible and in the main difficult to follow, was read by plaintiff's counsel in court. It revealed an obvious repeated attempt on the part of Lavenbarg to secure an admission from Pacifici that he told plaintiff to drop the matches into the flash tube; but instead, among other things, Pacifici made a series of denials such as: "I didn't tell the girl anything"; "she didn't ask me anything because I was painting"; "I didn't tell her anything. I don't know what I tell her"; "I don't know what I ask her"; "I didn't have no conversation with her at all"; and "No, I didn't say that. No damn fool would do that. There's a little hole like and you don't put your face in there. You get the match first then you turn the key on and you put 'em in there. You don't drop 'em in the hole." Thereafter, plaintiff's counsel brought in the recording; after an explanation by Craig that part of it had been unintentionally destroyed the day before, under circumstances the trier of fact might well question, the part available was played to the jury but not transcribed in the record before us. It appears however, from other testimony, that Pacifici resented the presence of the two investigators and after extended efforts on the part of Lavenbarg to secure an admission from Pacifici, the latter told them to get out.

James C. Holiman, of the Southern California Gas Company, and an expert for the defense, testified that on June 16, he inspected the stove in the presence of plaintiff's husband, found three or four matches in the flash tube which were obstructing the flow of gas, and after removing them he got "good ignition from the burner"; that he found no mechanical defect in the stove, nothing wrong with the alignment of the flash tube and no wire on it; that a common cause of explosion in this type of gas range is the practice of the customer, of turning the gas on first, reaching for a match and then applying the match to the flash tube an interval later; and that his opinion of the cause of the instant explosion was; ". . . the customer must have attempted to light the oven and the matches in the flash tube restricted the flow of gas so much that there may have been some coming up, but the flame would not go back to light the burner, so that caused

the accumulation of gas in the oven which later on led to the flash or the explosion.'' Defense witness, Bruce, a retired fireman and manager of Pacifici's apartment house, testified that he heard ''a noise, a poof or a bang''; that later plaintiff came to his door and told him she had an accident with the stove, whereupon he went to her apartment, examined the stove, tried the broiler and it lit properly.

Appellant's main complaint arises out of alleged prejudicial misconduct of defense counsel. She first points up the manner in which he moved for an order appointing an independent ophthalmologist to examine her, and argues that counsel intentionally created innuendos that she had avoided a defense medical examination, the defense wanted her examined by a court-appointed doctor, and that she was ''trying to make a case over nothing.''

Dr. Saltz testified for plaintiff that as a result of the explosion she sustained permanent injury and impairment to her left eye. Dr. Ravdin, who had examined plaintiff at the request of defendant Rheem, testified that there is no true organic basis for plaintiff's complaints and they are either due to malingering or the result of hysteria. Two days later, on Monday, Pacifici's counsel said in open court ''. . . on behalf of defendant Pacifici, and in view of the fact that there is a wide divergence in the medical testimony in this case——,'' at which point he was interrupted by the court and then by plaintiff's counsel who first mentioned the word ''motion''; the trial judge then said, ''I do not know what this is leading up to'' and counsel continued, ''May I make the motion, your honor?'' without designating the kind of motion. The court invited him to the bench, where counsel moved for an order appointing an ophthalmologist to examine plaintiff. Plaintiff's counsel strongly objected; the motion was denied. Appellant claims that juror number 4 overheard them at the bench and juror number 2 ''was probably aware'' of the situation. The fact is that juror number 4 in a very brief affidavit said only that he ''heard a motion . . . during the course of the trial'' and juror number 2 declined comment to the court.

The record supports no error in connection with this conduct. While such practice is certainly not to be condoned, Pacifici's attorney actually did not make any motion in the presence of the jury. It is true that he commenced one, and had he not been checked it is likely he would have completed

it; nevertheless, he did not finish it. Neither did he utter the word "motion" before plaintiff's counsel first used the term, nor refer to a court-appointed eye doctor or that his motion concerned the same in the presence of the jury, nor subsequently inform it that a motion had been made or its subject matter. What counsel said before the jury was not even sufficient for the court to "know what this is leading up to." Any suspicion such a motion had been made and to what it referred could be due only to conjecture and speculation; the affidavit of juror number 4 sheds no light on how or when he "heard" the motion.

▇▇▇ Even had the jury speculated about the proceedings at the bench, we fail to find any prejudice to plaintiff's case. While all motions, which are not purely formal, should be made out of the hearing of the jury, the misconduct of making them in its presence is not necessarily prejudicial. (*Trainor* v. *Maus*, 126 Cal.App.2d 295 [271 P.2d 957]; *Atchison, T. & S. F. Ry. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505 [57 P.2d 575].) Assuming that juror number 4 did guess what took place at the bench, there is no showing by way of affidavit or otherwise, that such knowledge in any way influenced his verdict. Nevertheless, appellant claims that this, combined with certain comments hereinabove referred to, created a "prejudicial atmosphere."

The conduct complained of occurred with reference to the damage issue; on the issue of liability, it is apparent from the record that it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Murphy* v. *Atchison, T. & S. F. Ry. Co.*, 162 Cal.App.2d 818, 823 [329 P.2d 75]; *People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].) The evidence is not close or one-sided or so evenly balanced that prejudice probably resulted, but of more than ample substance to support the verdict. The jury, determining the credibility of the witnesses, weighing the evidence and resolving the factual conflicts, rejected the plaintiff's version of what occurred; it believed plaintiff was not entitled to a judgment at all and we find in the evidence every justification for its conclusion. Moreover, all of these complaints constituted part of plaintiff's motion for a new trial, which was denied. The trial court is better able to determine if any prejudice resulted from asserted misconduct (*Winchell* v. *Lorenzen*, 123 Cal.App.2d 704 [267 P.2d 398]); thus it was within the discretion of the lower court to apprise its effect (*Climo* v. *Lamp*,

176 Cal.App.2d 509 [1 Cal.Rptr. 468]), and its determination will be disturbed only when the record shows an abuse of discretion. (*Jonte* v. *Key System*, 89 Cal.App.2d 654 [201 P.2d 562].) We find none in the record before us.

 Appellant says the calling of plaintiff's counsel as a witness, without any material or relevant purpose and with the intention of degrading plaintiff's case, was prejudicial misconduct. Lavenbarg, shortly after the accident, and another investigator, Craig, went to Pacifici's home; he testified to certain statements Pacifici was alleged to have made. On Pacifici's direct examination it was revealed for the first time to his counsel by plaintiff's attorney that there was in existence a wire recording of the conversation between Pacifici and Lavenbarg made secretly by Craig on a hidden minifone. After this disclosure and the use by plaintiff's counsel of the substance of certain statements assertedly made by Pacifici to Lavenbarg during this time, which was far from satisfactory and wholly disconnected, plaintiff's counsel at the instance of defense counsel finally brought the recording to court and that part not destroyed was played to the jury. Lavenbarg had testified he had no knowledge that Craig was recording the interview, yet it was more than obvious from Pacifici's numerous denials, the manner in which they were made, the conduct of both investigators in his home and Lavenbarg's numerous repeated attempts to secure an admission from Pacifici, that Lavenbarg most certainly knew a recording was being made. Too, after the testimony of Pacifici and the questionable explanation of Craig concerning the circumstances of the destruction of part of the recording, it is apparent that more took place than either Craig or Lavenbarg was willing to admit. Thus, Pacifici's counsel called plaintiff's attorney, Sam Schermer under section 2055, Code of Civil Procedure, relative to his instructions to Lavenbarg and Craig when he sent them to Pacifici's home, this for the purpose of impeaching the prior testimony of Lavenbarg that he did not know the interview was being recorded by Craig. Not only did Mr. Schermer have no objection to being called as a witness, but he expressly so stated in the presence of the jury: "I have no objection your honor. Will it be all right for me to take my notes to the witness stand?" The court said, "Yes." The purpose of impeachment is clear and wholly proper; it is material to the credibility of Lavenbarg, plaintiff's main witness on the issue of what, if anything, Pacifici told plain-

tiff about the use of the stove; and we see nothing of a degrading or insulting nature in the questions propounded to Mr. Schermer, which he readily answered without objection.

She cites as prejudicial misconduct a remark by Pacifici's counsel concerning his financial status. During his argument he said: "We started out in this case with Mr. Pacifici being sued for $100,000 and then we have esteemed counsel telling you that Mrs. Shebashin is now entitled to $36,000 and I was thinking as he wrote those figures upon the board, it would take an awful lot of haircuts and an awful lot of shaves——," at which point an objection was made; it was sustained and the court made the following statement to the jury: "The defendant's financial condition should not be one of the elements to be considered. It is only what damage has been suffered by Mrs. Shabshin, if the defendant is liable." The matter was never again mentioned.

While undoubtedly mention of a party's financial condition is improper, counsel failed to finish his remark. Nevertheless, it should never have been started (*Ensign* v. *Southern Pac. Co.*, 193 Cal. 311 [223 P. 953]), although such conduct alone will not here justify reversal. With reference to a similar situation, but one in which the remark was completed, the court in *Drotleff* v. *Renshaw*, 34 Cal.2d 176, said at page 180-181 [208 P.2d 969]: "The reference apparently was a casual one, with no effort at repetition to 'aggravate the effect' (see *Carlston* v. *Shenson*, 47 Cal.App.2d 52, 61 [117 P.2d 408]), and the trial court acted promptly to correct the impropriety and remove any effect it might otherwise have had . . . Under such circumstances it may not be fairly said that the reference in question contributed to the amount of the verdict, and that the trial court's timely action was ineffectual in curing the impropriety. [Citations.]" Considering the record before us, the apparent personal conflict existing among counsel, the nature of the remark, that it was a casual one, the time it was made during argument, the trial judge's immediate instruction to the jury, and that it was never thereafter referred to or repeated, we find no damage to plaintiff's case.

Throughout appellant's somewhat lengthy argument she cites numerous instances of what she labels "deliberate" misconduct. Taken in context they appear to be insubstantial in nature constituting no pattern of intent to gain an unfair advantage, and which, when considered with the evidence, have little more than a minor, harmless over-all effect. While

it is true that the cold record does not often lend itself to reflect the true atmosphere of the trial, nevertheless we fail to find any error which resulted in prejudice to plaintiff; moreover, from the entire evidence we believe the judgment to be clearly right.

 Appellant asserts error in the admission of expert testimony that the stove had been approved by the American Gas Association Testing Laboratories. On cross-examination plaintiff's counsel asked Holiman, a defense expert witness, if the stove in question was "a so-called C.P. Range," he answered, "No"; then he asked, "What is a C.P. Range?" and Holiman replied, ". . . it was 'certified performance.' In other words, automatic ignition to all burners"; plaintiff's counsel continued, "This means 'certified for safety and convenience' doesn't it?" and Holiman answered, "That is correct." Before this there had been no evidence concerning what if any standards had been met by the stove. However, thereafter, Thorpe, another expert and a chemical engineer called by defendant Rheem, testified among his qualifications, that from 1945 to 1948 he was in charge of the natural gas bureau appliance testing laboratory (American Gas Association Testing Laboratories), a unit maintained by the Southern Counties Gas Company and Southern California Gas Company; that an appliance sent to this unit, which had a design within the necessary requirements, is registered with the Blue Star of Approval, which is then applied to each model that goes out in the field. Before counsel asked if the gas range in question had that approval, the matter was argued at the bench. Overruling the objection, the trial court in effect then stated to the jury that previously the other witness (Holiman) was asked whether the stove was a "C.P. stove, certified performance" and the answer was that it was not, "that C.P. was put on the stove only when it had all automatic pilots" and that this did not have an automatic pilot and therefore did not qualify; that counsel for defendant Rheem will ask Thorpe whether this stove "was given some other designation or some other approval, having met some other type of standards set up," which will be allowed "for the purpose of indicating other factors which the jury may consider in determining whether or not the defendant Rheem Manufacturing Company was negligent in any way in manufacturing and producing and selling this type of stove, designed as it was." The court continued, instructing the jury: "The fact, if it is a fact, that this particular stove has met some other type of

standards set up by this organization, or that it has been certified on some basis, is not necessarily conclusive, one way or the other, as to whether or not the Rheem Manufacturing Company was negligent. It is one of the factors that the jury may consider and the jury may give that testimony whatever weight they feel it is entitled to. It will not be proof of either negligence or the absence of negligence, but it will be one of the facts and circumstances to be considered by the jury.'' Thereafter, plaintiff's counsel had ample opportunity to cross-examine Thorpe in connection with the American Gas Association Testing Laboratories and its standards.

The situation is a simple one—plaintiff's counsel for the first time introduced the issue of certification for ''safety and convenience'' into the case in his cross-examination of Holiman wherein he developed proof that the stove did not have the C.P. certified performance stamp of approval; but thereafter objected to testimony that the stove had another stamp of approval for safety. We find the cases cited by appellant relative to the nonadmissibility of medical books on direct examination not to be applicable; nor is *Blinkinsop* v. *Weber*, 85 Cal.App.2d 276 [193 P.2d 96], cited in her argument that such testimony constituted an ultimate fact and opinion which invaded the province of the jury. The record does not support this contention. Plaintiff sued Rheem on the theory of negligent manufacture. Thorpe was not asked if the stove was safe or properly constructed; on the contrary, he merely testified that he inspected it and found ''the Blue Star of Approval and . . . the serial number'' on it. Further, the trial court made it clear to the jury that his testimony ''will not be proof of either negligence or the absence of negligence, but it will be one of the facts and circumstances to be considered by the jury'' and that the fact that the stove has met some other type of standard set up or that it has been certified on some basis, is not ''necessarily conclusive, one way or the other, as to whether or not the Rheem Manufacturing Company was negligent.'' ▉▉▉ In any event, it is the law that duly qualified experts may testify not only to the facts but to the conclusions to which they lead (*McStay* v. *Citizens Nat. Trust & Sav. Bank,* 5 Cal.App.2d 595 [43 P.2d 560]) and their opinions may properly constitute probative facts to establish the ultimate fact. (*Northern Calif. Power Co.* v. *Waller,* 174 Cal. 377 [163 P. 214].) ▉▉▉ Thorpe testified the Blue Star of Approval indicates that the appliance had been tested in accord with the standards set up by the industry for a

minimum safety and performance; this in response to plaintiff's counsel's prior inquiry relative to the absence of certification for "safety and convenience." ■ While testimony of the ultimate fact of safety or hazard may be improper on the issue whether a place or a thing is safe, an expert should be permitted to testify whether it was constructed in accord with standard and accepted practice. (*Blinkinsop* v. *Weber*, 85 Cal.App.2d 276 [193 P.2d 96].)

■ In any event, under the evidence we deem the admission of Thorpe's testimony not to constitute a "miscarriage of justice" as to require a reversal under article VI, section 4½, California Constitution. (*Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71 [265 P.2d 513]; *Edgett* v. *Fairchild*, 153 Cal.App.2d 734 [314 P.2d 973].) Without considering Thorpe's testimony, the evidence is more than ample to support the jury's verdict; moreover, we see no prejudice to plaintiff's case in the admission of the testimony that the stove had the Blue Seal of Approval, for the evidence, obviously accepted by the trier of fact to be true, disclosed only one of two causes of explosion—either a clogged flash tube, made so by plaintiff's dropping matches into the aperture, or plaintiff's conduct in first turning on the gas and then after an interval, lighting a match—neither of which related to how or in what manner the stove was manufactured.

■ Nor was it error to permit Pacifici to demonstrate that he could force but nine unburned matches into the flash tube. Lavenbarg testified that he observed twelve matches in the flash tube. Later in the trial Pacifici disconnected the burner unit (Exhibit I) and brought it into court; his counsel then had him put matches, one at a time, in the flash tube until it was full; it held but nine matches. Appellant claims that the matches Lavenbarg saw were both paper and wood and had been burned and charred in whole or in part, and that Pacifici put new wooden matches in the tube. The trial judge properly held that it went to the weight of the evidence, and then specifically instructed plaintiff's counsel: "If you want the witness to put them in any other manner or shape, you can do so on cross examination." Plaintiff's counsel did not do so; he did not cross-examine Mr. Pacifici on this matter; nor did he make any demonstration of his own although the flash tube was available to him.

■ The purpose of the experiment was proper; moreover, experiments are within the discretion of the trial court (*Church* v. *Headrick & Brown*, 101 Cal.App.2d 396 [225 P.2d

558]) and while it must appear that the conditions and circumstances are in general the same in the demonstration and the situation at bar, the "determination whether the conditions were sufficiently similar to make the experiments of any value in aiding the jury is a matter resting in the sound discretion of the judge." (*Beresford* v. *Pacific Gas & Elec. Co.*, 45 Cal.2d 738, 748 [290 P.2d 498, 54 A.L.R.2d 910].)

The conditions surrounding an experiment need not be identical provided there is a substantial similarity. (*County of Sonoma* v. *Stofen*, 125 Cal. 32 [57 P. 681]; *Beresford* v. *Pacific Gas & Elec. Co., supra.*) We find no abuse of the trial court's discretion.

Nor was it error, under the circumstances, to permit inquiry relative to prior explosions of other stoves on the premises. The main theory of plaintiff's case was that Pacifici had negligently instructed her concerning the manner of lighting the stove; plaintiff repeatedly claimed that he told her to drop the match in the ignition hole; and much of the testimony of Lavenbarg revolved around what if anything was said. Defendant not only denied he had told plaintiff to put the matches in the flash tube, but that he ever instructed her how to light the stove. Thereupon, defendant's counsel asked Bruce, the apartment manager, if in the 15 years he had been there, there had ever been a gas explosion in *any* of the stoves in *any* of the apartments in the apartment house; his answer was: "Not to my knowledge." This had probative value and was material and relevant for if the jury believed plaintiff and Lavenbarg that Pacifici gave her instructions to drop the matches in the flash tube in lighting the burner, it could then well infer that he so instructed other tenants, in which event other explosions probably occurred, because Lavenbarg testified that one of the causes of the explosion was the flash tube becoming clogged with matches, as did defense witness Holiman. This situation is different from that in which a prior safe history (of the specific place or thing in question) free of similar accidents is held to be inadmissible.

Appellant's last contention that the giving of the instruction on a landlord's duty was error, is without merit. She claims that her case did not depend upon a dangerous condition and that the instruction assumed this and misled the jury into believing that assumption of risk was an additional defense.

An approved instruction on the duties and relationships of landlord and tenant was given; it commences: "As to the

plaintiff's cause of action . . . based upon negligence . . ." and continues that it is a tenant's duty to make reasonable inspection of the premises before she takes possession and she assumes the risk of any unsafe condition that comes to her attention or would come to her attention if she made such an inspection and exercised ordinary care in doing so. Appellant does not dispute the correctness of the law stated therein, only the propriety of giving it in this case. However, there is sufficient evidence in the record, if believed by the jury, to support such an instruction. Plaintiff contended that the gas stove was defective in that the flash tube was "completely out of line," and that the tube was held in position by a lot of wire, "such as baling wire" (testimony of Lavenbarg); moreover, Lavenbarg testified that one of the causes of the explosion was that the flash tube was out of alignment. On the defense, Holiman, who inspected the stove shortly after Lavenbarg's inspection, testified that not only was the flash tube in alignment but there was no wire. On the issue of Pacifici's negligence, if the jury was to believe Lavenbarg it could also reasonably infer from that and other evidence that the conditions of the burner were visible and apparent and would have come to plaintiff's attention had she made a reasonable inspection of the stove.

For the foregoing reasons the judgment is affirmed and the appeal from the order denying the new trial being nonappealable is dismissed.

Wood, P. J., and Fourt, J., concurred.