[Civ. No. 27331.    Second Dist., Div. Four.    Oct. 31, 1963.]

INA CLAIRE KRAUS, Plaintiff and Appellant, v. WALT DISNEY PRODUCTIONS, INC., et al., Defendants and Respondents.

Samson, Goldwasser, Fry & Ritter and Maurice Rose for Plaintiff and Appellant.

Spray, Gould & Bowers and Joseph L. Spray for Defendants and Respondents.

KINGSLEY, J.—Access to the production lot of defendant studio is by means of a gate or turnstile. This turnstile resembles the ordinary revolving door, except that, instead of the usual glass panels, each panel or segment is composed of a series of metal bars. The gate is controlled by a button in the casting office, which button, when pushed, activates an electric current which releases a dog or catch. When the button is released, the dog reengages, stopping the rotation of the gate. The evidence indicates: (a) that, in order to permit access, the control button must be kept depressed during the full period while a user passes through the gate; (b) that, occasionally, after use, the gate would stop midway between the engaging points for the catch, so that the gate could be moved, without activity by the controller, for approximately one-sixth of a full circle, after which it would be stopped by the catch; and (c) that, when the catch engaged, the gate, because of "play," would rebound between 3 inches and a foot.

Plaintiff's minor daughter was engaged by defendant studio as an actress. Because of the daughter's minority, the presence of plaintiff with her daughter on the studio lot was required. Admittedly, plaintiff held the status of a business invitee, with all of the rights, duties and privileges which that status created between her and the defendants.

On the morning of August 29, 1959, the daughter was due to report at the studio for work at 7:30 a.m. The record indicates that they were a few minutes late and that the daughter entered the premises, using the turnstile, ahead of the mother, who had stayed behind to park her automobile. After securing a pass or voucher from the casting office, the mother approached the turnstile and started to pass through

it. Under circumstances hereinafter discussed, she either ran into the metal bars, or was struck by them when the gate was unexpectedly stopped by reason of premature release of the control button. She sustained injuries for which the present action was brought, naming as defendants the corporate defendant and the employee who had controlled the turnstile. After a trial before a jury, the jury returned a verdict for defendants. A motion for new trial was denied and the present appeal followed.

I

█ Appellant contends that the evidence does not support the verdict. The contention is without merit. Plaintiff's evidence tended to show that defendant De Camp, who had operated the turnstile on the morning in question, was unfamiliar with its operation and that he might have released the control button while plaintiff was only partly through the gate, thus causing it to stop, rebound and hit her. Her own testimony also negatived any conduct on her part amounting to contributory negligence. A verdict in her favor would not have been improper. However, the jury was not required to accept plaintiff's version. Not only was she subject to the ordinary implications of bias, attributable to any party, but some impeaching evidence was introduced against her. In addition, defendants' evidence not only would support a finding that De Camp was free from negligence, but also that plaintiff, already some 10 minutes late, ran toward the turnstile, with her arms loaded with purse and bundles, in an apparent effort to catch up with her daughter and eliminate any further delay in reporting, and that she ran blindly into the gate as a result of her own inattention. These are the familiar conflicts in testimony. The jury's determination against plaintiff, endorsed by the trial court's denial of a new trial, is binding on us and on her.

II

Appellant objects that error occurred in the action of the trial court in permitting the jury to view the turnstile, in allowing counsel for each party to demonstrate its operation to the jury, and in alleged improper control of the jury during the view and experimentation. Her contentions are: (a) the turnstile was not in the same condition as at the time of the accident; (b) the experiments were improper in that the jurors who participated knew beforehand that the gate would be stopped without warning, whereas plaintiff had had

no such knowledge; and (c) the jurors were allowed to wander and to communicate with others.

The third point may be dismissed at once. The trial judge stated, on the record, that he had observed the conduct of the jurors during the view and experiment and that appellant's claims of misconduct were not true.

As to the other points: It is well settled that the granting or denial of a view of the premises, or the admission of experiments, lies in the discretion of the trial court. (Code Civ. Proc., § 610; *Beresford* v. *Pacific Gas & Electric Co.* (1955) 45 Cal.2d 738 [290 P.2d 498, 54 A.L.R.2d 910]; *Nunneley* v. *Edgar Hotel* (1950) 36 Cal.2d 493 [225 P.2d 497]; *Shabshin* v. *Pacifici* (1961) 196 Cal.App.2d 192 [16 Cal.Rptr. 440]; *Newman* v. *Los Angeles Transit Lines* (1953) 120 Cal.App.2d 685 [262 P.2d 95].) As these cases point out, questions of similarity of conditions, and similar matters, are primarily for the trial court in deciding to grant or not to grant permission for view or experiment; thereafter they go only to the weight of the demonstrative evidence and should be argued to the jury and not to us.

In the present case, evidence had differed substantially as to the actual operation of the turnstile and as to its propensity to rebound. A view of the device in actual operation was regarded by the trial judge as useful to enable the jury to decide this conflict. We cannot say that he was wrong.

### III

Appellant contends that there was intentional concealment by a juror, during his *voir dire* examination, of a state of mind which would prevent his acting impartially, and entitled appellant to a new trial. It is well settled that such intentional concealment constitutes an irregularity for which a new trial may be granted under section 657, subdivisions 1 and 2 of the Code of Civil Procedure. (*Williams* v. *Bridges* (1934) 140 Cal.App. 537 [35 P.2d 407].) However, a motion for new trial upon this ground must be accompanied by affidavits of both the moving party and his counsel affirmatively showing that neither had knowledge of such dereliction on the part of the juror at the time of completion of the impanelment of the jury, and that they did not discover such fact during the trial and before the rendition of the verdict. (*Forman* v. *Alexander's Markets* (1956) 138 Cal.App.2d 671 [292 P.2d 257].)

Appellant has failed to meet this burden. In the first instance appellant did not file any affidavit. This omission is in

itself fatal to the contention. Secondly, while appellant's counsel stated to the court "I further want to state, your Honor, that if I had known, or the plaintiff had known that the jurors had a state of mind as existed, or they were worried about their insurance rates, I would have challenged them off the jury. I did not know that," his affidavit in support of a new trial on this point made no such allegation. All it stated on this point was: "Declarant further states that all the jurors replied on viore dire [sic] examination that they would be unbiased, fair and impartial and they were not prejudiced, and that jurors Donovan, Prokop, Adams and Darsey were prejudiced against giving awards because of the effect on their insurance rates." Such an allegation, being silent on the crucial point that neither appellant nor her counsel had knowledge of such dereliction nor did they acquire knowledge thereof during the trial or before the rendition of the verdict, is defective and insufficient.

Furthermore, the trial court's finding of no concealed bias, in ruling on the motion for new trial, is supported by substantial evidence. The finding by the trial judge that there was no sufficient affirmative showing of intentional and conscious concealment of prejudice on the part of any jurors to justify a new trial is supported by the sworn testimony of three challenged jurors, as well as the testimony of the jury foreman and five other jurors. The trial court's determination, under these circumstances, is conclusive on us. (*Brickell* v. *Wittmar* (1959) 175 Cal.App.2d 190 [345 P.2d 494].)

## IV

Appellant's final contention is that the answer filed on behalf of defendant De Camp was unauthorized by him; therefore, that defendant was in default and that judgment should have gone against rather than for him. The point is without merit. While defendant De Camp testified that he had not seen the answer filed in his behalf before it was shown to him at the trial, and that, other than an appearance at a deposition, he had had no personal contact with the counsel who appeared for him, this does not defeat the presumption that an attorney who appears for a party does so with authority and authorization. (1 Witkin, California Procedure, Attorneys, § 41.) It is common practice for an employee, sued jointly with his employer, to turn over the conduct of the litigation to the employer and to the latter's

attorneys. Under such circumstances, no direct contact with counsel need result, the authorization being accomplished by the employer as intermediary.

In this case, since the complaint was unverified, De Camp's answer required no verification, and whatever good practice might suggest, we know of no law which requires counsel to exhibit to a client unverified documents which are to be filed.

Further, the pretrial statement recites that "all pleadings appear to be in proper order and issue is joined"; De Camp appeared at the trial and accepted the representation by the employer's counsel as his own. Any possible deficiency was thereby doubly cured. Appellant cannot now raise the matter for the first time on appeal.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 18, 1963.